JAMES H. STRYKER, trustee, *vs.* HENRY PERKINS KENNARD & others.

Middlesex.  May 6, 1959. — June 9, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Trust,* Construction, Income beneficiary, Provision for "wife," Termination. *Equity Jurisdiction,* Instructions. *Words,* "Wife."

Under a trust instrument made at a time when, to the knowledge of the settlor, the first income beneficiary had been divorced from one wife and was having marital difficulties with his then second wife, named Irma, and providing that upon his death the income be paid "to his wife as long as she remains his widow," that upon the death or remarriage of "his wife" the income be paid to the issue of him and "his present wife Irma . . . or . . . any succeeding wife" until the expiration of twenty years after the death of the survivor of him and "his present wife Irma" or until his youngest child should become twenty-five years old, whichever should first occur, and that then the principal be transferred to the surviving issue of him and "his wife Irma . . . or any succeeding wife" or, in default of surviving issue of him and

"his present wife or any subsequent wife," to others, a third wife whom he had married after he had been divorced from Irma and Irma had died and who survived him was his "wife" within the gift over of the income on his death and was entitled to the income until her, the third wife's, death or remarriage, and the trust did not terminate upon his death notwithstanding that Irma had died and that the younger of his two children surviving him was more than twenty-five years old at his death. [377–378]

In a proceeding by a trustee for instructions as to whether, under a provision of the trust instrument for payment of the income upon the death of the first income beneficiary to his "wife" until her death or remarriage, where the woman who had been his wife at the time of the creation of the trust had died and he had remarried, the succeeding wife, who survived him, was entitled to the income or whether she was not so entitled and in the circumstances the trust had terminated, upon a decision that she was entitled to the income and that the trust had not terminated, an instruction accordingly was sufficient with respect to the trustee's present duties and it was unnecessary to deal with questions involving the nature and validity of and the persons entitled to the remainder interests in the principal upon termination of the trust. [378–379]

PETITION IN EQUITY, filed in the Probate Court for the county of Middlesex on October 23, 1957.

The case was heard by *Leggat*, J.

*Bradbury Gilbert*, stated the case.

*Guy Newhall*, for Henry P. Kennard.

*John E. Rogerson*, (*Ernest G. Angevine* with him,) for Margaret Coppin Kennard.

*A. Leavitt Taylor*, (*Amos L. Taylor & Lambert H. Bigelow* with him,) for Edith B. Clinton and others.

*William J. O'Neill*, guardian ad litem, pro se.

SPALDING, J. James H. Stryker, successor trustee under a declaration of trust executed by Isabella H. Adams, brought this petition for instructions in the Probate Court for Middlesex County.

The trust instrument, which is dated April 25, 1912, declares that Isabella H. Adams transferred certain shares of stock to herself and Julius B. B. Stryker in trust to pay the income to Waldo Kennard for life. On Waldo's death the income was to be paid ". . . to his wife as long as she remains his widow, and on the decease of said Waldo and on the death or remarriage of his wife to divide said income

equally among the children then living of said Waldo Kennard by his present wife Irma Evelyn or by any succeeding wife, the issue of any deceased child to take the parent's share by right of representation, until twenty years after the death of the last survivor of said Waldo Kennard and his present wife Irma Evelyn, or until the youngest of his said children attains the age of twenty-five years, whichever event shall first occur, and then to divide the principal equally among the then surviving children of said Waldo by his wife Irma Evelyn or any succeeding wife, the issue of any deceased child to take the parent's share by right of representation. In case there shall be no issue of said Waldo Kennard and his present wife or any subsequent wife living at the termination of this trust, the same to be paid to those persons who would then be entitled to receive the same had I then died, intestate, a resident of the Commonwealth of Massachusetts, possessed of the same as my own property."

Facts alleged in the trustee's petition were admitted by all parties to the proceeding. Waldo Kennard, the life tenant of the trust, died in 1946. He had been married three times. His first marriage was terminated by divorce prior to the creation of the trust. By that marriage he had a daughter, Priscilla, now living. In 1901 he married Irma Evelyn, his second wife, by whom he had two sons, Adams, who was born in 1902 and died in 1937 without issue, and the respondent Henry Perkins Kennard, born in 1907, who is the only living issue of Waldo, other than Priscilla and her issue. Waldo and Irma Evelyn were divorced in 1925 and she died in 1926. In 1912, when Mrs. Adams created the trust, Waldo was married to Irma Evelyn, and there had been marital difficulties between them. In 1928 Waldo married his third wife, the respondent Margaret Coppin Kennard. There was no issue of this marriage. Margaret has received the income of the trust from Waldo's death until the commencement of this proceeding.

In his petition the trustee sought instructions as to the following questions concerning the interpretation of the trust instrument:

"A. In carrying out the terms of said trust, should the petitioner as trustee continue to pay the income of said trust to Margaret Coppin Kennard as life tenant of the trust so long as she remains unmarried or until her death?

"B. Has the trust by the terms of said trust instrument . . . terminated, and if said trust has terminated, to whom should the trustee turn over the principal of the trust?

"C. If the trust has not terminated, have the heirs at law of Isabella H. Adams any interest in the trust as contingent remaindermen or otherwise to entitle them to notice by the trustee as interested parties in connection with said trust, or any proceedings in the Probate Court concerning said trust, and if so, what is the nature of their interest?"

Answers were filed by Margaret, by Henry, by the adult heirs at law of the settlor, and by William J. O'Neill, as guardian ad litem for the minor heirs at law and next friend for unborn and unascertained persons who may be heirs at law. Henry moved to strike the appearances and answers of the settlor's heirs at law. This motion was dismissed. After a hearing the judge entered a decree ordering the trustee to pay the trust income to Margaret so long as she remains unmarried or until her death.[1] Henry appealed from this decree and from the decree dismissing his motion to strike.

Henry contends that the trust terminated upon the death of Waldo, that Margaret is not entitled to the income and that the principal should be paid to him. He argues that the settlor did not specifically make a gift of income to any wife other than Irma Evelyn, and that it must be presumed that the gift to Waldo's widow was a gift only to the wife of Waldo known to the settlor at the time of the creation of the trust. His argument is founded in the main upon the decision of this court in *Hill* v. *Aldrich*, 326 Mass. 630.

Margaret and the heirs of the settlor oppose the interpre-

---

[1] It will be noted that the court in its decree gave no instruction as to question "C" but confined its instructions to the trustee's present duties. No contention is made that the court erred in so doing. In any event we are of opinion that it did not. *Hill* v. *Moors*, 224 Mass. 163, 165. *National Shawmut Bank* v. *Morey*, 320 Mass. 492, 494.

tation sought by Henry; they also assert that Henry is barred from challenging Margaret's status as life tenant of the trust under the doctrine of res judicata or of collateral estoppel because of a decree allowing the first account of the trustees entered with Henry's consent on November 12, 1947, and a decree of October 7, 1952, allowing the trustee's second account taken pro confesso as against Henry.

We prefer to rest our decision as to the validity of Margaret's life estate upon a construction of the trust instrument without deciding whether such inquiry is precluded by reason of res judicata or collateral estoppel.

It is familiar law that in construing a trust instrument the intention of the settlor must be ascertained from the entire instrument, giving due weight to all its language, considered in the light of the attendant circumstances known to the settlor at the time of execution. The intent ascertained in this manner must prevail unless a positive rule of law forbids.

We think it clear that the settlor intended to make a gift of income to the person married to Waldo at the time of his death. The instrument specifies that the gift of income is to "his wife as long as she remains his widow." The settlor then provides for remainders to the children of Waldo "by his present wife Irma Evelyn or by any succeeding wife." Each time the word "children" or "issue" is used, the settlor carefully included the children or issue by a subsequent wife. Irma Evelyn is twice identified as Waldo's "*present* wife" (emphasis supplied). To be sure, these repeated indications that the settlor was aware that the marriage of Waldo and Irma Evelyn might terminate and that Waldo might later remarry are contained in that portion of the dispositive clause which deals with the remainders. But this circumstance does not lessen their impact on the interpretation of the gift of income to Waldo's widow. An interpretation that the settlor intended to include within her bounty the children of a subsequent marriage but not the subsequent wife would be unrealistic and cannot be accepted. Moreover, the settlor mentioned Irma Evelyn

by name no less than three times.  It is reasonable to assume that she would have made the gift of the life interest following the termination of Waldo's interest to Irma Evelyn by name had she intended to exclude any subsequent wife.  The conclusion that the settlor intended to provide for a possible subsequent wife is strengthened by the fact that she was aware that at the time the trust was established Waldo had been divorced from his first wife and was in the midst of marital difficulties with his second wife.

The case of *Hill* v. *Aldrich,* 326 Mass. 630, does not require a contrary interpretation.  There the rule was established that a "gift to the widow of another is presumptively at least a gift only to that other's wife who was known to the testator" (p. 633).  The quoted language makes it clear that the rule is one of construction, not one of law.  A rule of this character must yield whenever a testator or a settlor expresses an intention to dispose of property in a manner inconsistent with the result obtained by the application of the rule.  Such an intention was expressed here.  In the *Hill* case the application of the rule of construction merely supported other affirmative evidence of the intention of the testatrix.

Henry also argues that this court will not construe the word "wife" to include a subsequent wife if such a construction would result in a violation of the rule against perpetuities.  See *Second Bank-State St. Trust Co.* v. *Second Bank-State St. Trust Co.* 335 Mass. 407, 412.  He argues that if a subsequent wife is included in the term "wife" in this instrument then the gift to Waldo's issue is invalid because Waldo might marry a person not yet born when the trust was created.  This is not an appropriate time to pass upon the validity of the remainder interests.  Courts ordinarily refuse to give instructions to fiduciaries as to possible future duties and we see no reason for departing from that principle here.  *Bullard* v. *Chandler,* 149 Mass. 532, 538.  *Boyden* v. *Stevens,* 285 Mass. 176, 180, and cases cited.  It should be noted, however, that the interpretation placed upon the instrument by Henry is by no means the only rea-

sonable one. The gift of income to Margaret as Waldo's widow is valid in any event. The clear intention of the settlor to benefit any succeeding wife could not be disturbed even if the execution of that intent would result in the invalidity of later gifts.

The instruction of the Probate Court to the trustee to pay the income of the trust to Margaret so long as she was alive and remained unmarried was correct.

We turn now to the dismissal of Henry's motion to strike the appearances and answers of the adult heirs at law. His theory is that under any interpretation of the trust instrument the heirs at law of the settlor have no valid interest entitling them to appear in this proceeding. He argues that if his interpretation should prevail the trust terminated at Waldo's death; if it did not terminate at that time then all the remainders are invalid by reason of the rule against perpetuities.

We have already held that the trust did not terminate at Waldo's death and that Margaret is entitled to the income so long as she remains unmarried or until her death. This determination is a sufficient instruction to the trustee touching his present duties. The motion to strike involves matters which do not concern these duties. For present purposes this motion is academic. Accordingly we deem it unnecessary to pass on the correctness of the decree dismissing the motion.

The final decree is affirmed. Costs and expenses of appeal are to be in the discretion of the Probate Court.

*So ordered.*