326 So.2d 742

**Eric O. CATES et al.**

v.

**Fred BUSH.**

**SC 1260.**

Supreme Court of Alabama.

Jan. 29, 1976.

Calvin Poole and William Hamilton, Greenville, for appellants.

W. J. Williamson, Greenville, for appellee.

SHORES, Justice.

This is the second time this case has reached this court. In *Cates v. Bush*, 293 Ala. 535, 307 So.2d 6 (1975), the appeal was dismissed since there was no final judgment to give this court jurisdiction.

In the original complaint, as amended, the plaintiff sought to sell certain lands for division with the proceeds to be divided among claimants thereto, and the commuted value of the plaintiff's life estate to be determined and paid to the plaintiff, Fred Bush. The defendants filed a cross com-

plaint asking for an accounting based upon their claim that, as heirs of S. D. Barganier, they held a three-fourth's interest in the property in question.

The following facts, as found by the trial court, were undisputed:

The testator, S. D. Barganier, had no issue. His wife, Martha Jane Perry Gafford, had a three-year-old daughter, Elizabeth, by a previous marriage when she married S. D. Barganier in 1874. Elizabeth was reared in the Barganier home and was treated as Mr. Barganier's daughter, although no formal adoption was ever effected. Elizabeth, upon attaining age, married John W. Bush. The Bushes had four children, Ila Mae Bradley, Mattie Lucile Parker, Cumi Bush, and Fred N. Bush, all of whom were stepgrandchildren of the testator, S. D. Barganier. John W. Bush died in 1903 and, upon his death, Elizabeth returned to Greenville, the home of S. D. Barganier. Her youngest child, Fred N. Bush, at approximately age three, moved into the Barganier home and was cared for by his step-grandfather, S. D. Barganier, and his grandmother. Fred N. Bush was reared in the Barganier home and was living there at the time of the death of S. D. Barganier. Sometime later Elizabeth Bush returned to a home provided her and her other three children by Mr. Barganier which home was adjacent to his. Mattie Lucile Parker married and moved out before S. D. Barganier died. Cumi Bush was living in the home of S. D. Barganier at the time of his death. In 1916, Ila Mae Bradley died and was survieved by one child, Frederick Bradley, who was born in 1909. Frederick Bradley went into the home and was reared by his step-great-grandfather, S. D. Barganier, and his great-grandmother. S. D. Barganier died on June 19, 1918, having executed his last will and testament on April 5, 1918, during his last illness. At the time of Mr. Barganier's death, his heirs and next of kin consisted of four living sisters and twelve nieces and nephews, who were the offsprings of two deceased sisters and one deceased brother.

Mr. Barganier's widow died in 1935. Cumi Bush died in 1928 and Mattie Lucile Parker died in 1932, before the death of the widow, Martha. Frederick Bradley died in 1952.

The single issue presented here is what interest in the real estate of S. D. Barganier does Fred Bush now have under the will of S. D. Barganier.

By Item Two of Mr. Barganier's will, he left all of his property, both real and personal, to his wife, Martha J. Barganier, to be held and used by her during her lifetime. This item also gave to Martha full power and authority to sell and convey any or all of the personal and real property. Item Two provides ". . . While I have limited the bequest and devise of all the property of my estate to the life of my wife, it is my will and desire, that she may sell or dispose of, at any time, either at private or public sale, any or all of my property for her own use . . . But my said wife shall not have power or authority to dispose of any of the property of my estate by will or to take effect after her death. . . ."

Item Three is set out in its entirety since it is this item with which we are concerned:

## ITEM THREE

"It is my will and I so direct that out of the moneys and personal property that remains after the death of my said wife and undisposed of by her, all of her debts, funeral, burial expenses and the expenses of erecting a suitable tombstone over her grave shall first be paid, and all of the residue of my personal property left after the death of my wife including moneys, choses in action and all other species of personal property shall vest in and be divided, share and share alike, among Mattie Lucile Parker, Cumi Bush, Fred N. Bush and Frederick Bradley,

son of Ila Mae Bradley. Whatever remains of the real property of my estate at the time of the death of my said wife and not disposed of by her, I give and devise into Mattie Lucile Parker, Cumi Bush, Fred N. Bush and Frederick Bradley during their life and no longer, and the remainder in all of said real property shall revert to and become the property of my estate, to be divided according to law among my next of kin. Provided, that at the time of the death of either of the above named devisees his or her share shall at once revert to my estate and be disposed of according to the laws of descent and distribution. Provided, further, that if said life tenants of said real property shall fail to pay the taxes at any time when it shall become due, and said real property or any part thereof is subjected to a sale for taxes, then and in that event the whole of the real property in which a life estate is given to them shall at once revert to and become a part of my estate to be disposed of as hereinabove directed. Provided further, that if either of said devisees shall sell or convey his or her share in said real property at any time, that his or her life estate shall at once terminate and revert to my estate to be disposed of according to law as above directed."

The question presented is whether the testator intended a gift to individuals or did he intend a class gift. If the former was intended, then as each individual died, his interest lapsed and that interest, under the terms of the will, reverted to the heirs of the testator. If a class gift was intended, then the surviving members of the class took a life estate in the property, with the last survivor, in this case Fred N. Bush, being entitled to a life estate in the whole of the property for the remainder of his life.

The trial court found that the testator intended that each life tenant should have the use, benefit and enjoyment of the property to continue ". . . undiminished for each said devisee until the death of the last surviving life tenant. . . ."

It is admitted on all sides that the intention of the testator is the law of the will, and that the will should be considered as a whole, giving effect to each provision, if possible, to effectuate the intention of the testator. *Davis v. Davis,* 289 Ala. 313, 267 So.2d 158 (1972).

The appellants are the heirs at law and next of kin of the testator. They contend that the trial court erred in its conclusion that the last survivor of the four named life tenants was entitled to the benefits and enjoyment of the property to the exclusion of the heirs and next of kin of the testator.

We agree. Although the first rule in construing a will requires any court to determine to the extent that it can, the intention of the testator, certain rules of construction have developed over the years to aid the court in this quest. One rule of long standing is designed to aid the court in determining whether a testator intended a gift to individuals or to a class. If the gift is to an individual, it lapses if the individual fails to survive the testator or fails to survive the holder of the antecedent estate and, of course, a life estate ceases upon the death of the life tenant. *Re Allen,* 44 L.T.R. (N.S.) 240 (Ch.D.1881). Contrarily, the very function of a class is, in effect, "to provide survivorship among the members of a group when the testator has failed to do so but would probably be best pleased with that distribution." Cooley, *What Constitutes a Gift to a Class,* 49 Harv.L.Rev. 903, 912 (1936).

In making that determination, it is entirely appropriate to inquire into the state of the testator's circumstances, including his family situation. Here the trial court did that and concluded, in effect, that the testator intended a class gift. We find ourselves in disagreement with this conclusion. As a general rule, where a testator names the individuals by name, there is a presumption that he intended to

make a gift to individuals and not to a class. Simes, *The Law of Future Interests,* West Publishing Company (1961); *Westerfelt v. Smith,* 202 Iowa 966, 211 N. W. 380 (1926); *Frost v. Courtis,* 167 Mass. 251, 45 N.E. 687 (1897); *In re Murphy's Estate,* 157 Cal. 63, 106 P. 230 (1909); *In re Kimberly's Estate,* 150 N.Y. 90, 44 N.E. 945 (1896).

Of course, this presumption may be overcome if there is language in the will to indicate a contrary intent on the part of the testator. One commentator has said:

". . . When the testator appears to have been so interested in the welfare of a group to whom he was giving something that, had he thought of it, he would have wanted those members who survived him to take it all in preference to having part of it lapse. [The court should conclude that he intended a gift to a class.] . . ." 49 Harv.L.Rev., supra, at 930.

We find no such indication of that intention here. On the contrary, the will of Mr. Barganier is replete with language which indicates that he intended a gift to each of the named individuals. He directed that Mattie Lucile Parker, Cumi Bush, Fred N. Bush and Frederick Bradley should have a life estate in his property (assuming it was not disposed of by his widow) "during their life and no longer." It provided that at the time of the death of *either* of the above devisees, "his or her share shall *at once revert to my estate* and be disposed of according to the laws of descent and distribution"; additionally, *"if either* of said devisees shall sell or convey *his or her share* in said real property at any time, that his or her life estate *shall at once terminate and revert to my estate* . . ." (Emphasis supplied)

All of these expressions are indications that the testator intended a gift to the named individuals and not a gift to a class. Each was devised an undivided one-fourth defeasible interest in the property for life.

The only language in the will to indicate a contrary intent is the use of the words "during *their* life and no longer." (Emphasis supplied)

Appellee argues that this indicates that Mr. Barganier intended to create a life estate in all of them, the interest of each passing upon his or her death to the successors, down to the last survivor. To adopt this construction is to ignore several other expressions which clearly indicate that Mr. Barganier intended the interest of each of the named individuals to revert to his estate on the death of *either* of them, or if *either* of them attempted to sell his or her share. Every expression in the will, with the exception of the use of the words "during their life" indicates that he intended to leave each of the named individuals an undivided one-fourth interest in his property for the term of the life of each.

Two of the named devisees died during the lifetime of the widow. Their interests therefore lapsed and never ripened into a right of possession. Upon the death of the widow, Frederick Bradley and Fred Bush each took an undivided one-fourth interest in the property for life. When Frederick Bradley died in 1952, his interest terminated and reverted to the heirs of S. D. Barganier under the terms of the will. Fred Bush, therefore, holds an undivided one-fourth interest in the property for the term of his natural life.

*McWhorter v. Cox,* 209 Ala. 233, 234, 96 So. 71, 72 (1923), involved a deed executed by Thomas A. Cox, the father of Bettie Cox McWhorter and Boyd Cox, which conveyed to his two children certain property, with the following language:

" 'For and during their natural lives and from and after their decease to their heirs at law, the following described real estate.'

". . .

" 'To have and to hold unto said parties of the second part for and during their natural lives and after their decease to their heirs at law in fee simple.' "

In construing that deed, this court said:

". . . It is also evident from this deed Thomas A. Cox intended to and did convey to Bettie Cox and Boyd Cox, his two children, and each thereby became invested with an undivided one-half interest in all the real estate described therein, for and during their natural lives, and on the death of either, his or her heirs became entitled to immediate possession of the one-half interest in which their ancestor had a life interest. The right to the possession of the half interest in the land of either Bettie or Boyd Cox by the heirs of either was not limited to death of both Bettie and Boyd Cox, but is limited to the death of their respective ancestor. Upon the death of each life tenant their children, respectively, took the fee of an undivided one-half interest in the land. . . ." (209 Ala. at 235, 96 So. at 72)

So here, each of the four named life tenants were entitled to an undivided one-fourth interest in all of the real estate of S. D. Barganier for and during their natural lives; and upon the death of each life tenant, the heirs at law and next of kin of S. D. Barganier took the fee of an undivided one-fourth interest in the land involved. Since two of the life tenants failed to survive the widow, the interest of each lapsed and became a part of the reversionary estate of the testator. The other two one-fourth interests became vested in Frederick Bradley and Fred Bush upon the death of the widow of S. D. Barganier. When Frederick Bradley died, his interest terminated and title to the property was vested in fee simple in the heirs of S. D. Barganier subject only to the outstanding interest of Fred Bush. Fred Bush therefore has an undivided one-fourth interest in the property for the remainder of his lifetime.

Appellee argues that *Hedricks v. Beam,* 241 Ala. 618, 4 So.2d 176 (1941), compels a different result. We cannot agree. The deed in that case contains language which clearly indicated that the grantor intended that the remaindermen would not take an interest in the property until the death of the last surviving life tenant. In that case the habendum clause of the deed was as follows:

" 'To Have And To Hold, unto the said Jesse E. Allen, a life interest in said land together with the right of possession and control of said land for and during his natural life, and after the death of said Jesse E. Allen, Lucy Allen Beam, Ruth Allen Gurley, Dora Allen and Arrieseal Allen Vaughn, each have and own a one-fifth (⅕) undivided interest in said above described land for and during their natural lives and the said Maurice Goble and Annie Sue Goble each have a one-tenth (1/10) undivided interest in said land after the death of the said Jesse E. Allen for and during their natural lives with remainder to their heirs and assigns forever.

" '. . .' " (241 Ala. at 620, 4 So.2d at 177)

The deed contained the following additional provision:

" '*This conveyance is made upon the further condition and for the consideration as above stated that said land shall not be sold for division among the grantees and their heirs until the death of the last surviving life tenant.*' (Italics supplied.)" (241 Ala. at 620, 4 So.2d at 177)

This court held that the condition just quoted was effective and meant ". . . that as long as any of the children or grandchildren of Jesse E. Allen, named in the deed, are alive the property granted shall be held intact for the joint benefit of the grantees . . ." (241 Ala. at 620, 4 So.2d at 178)

There is no language in the will of S. D. Barganier to suggest that he intended that his heirs would be deprived of the property until the death of the last surviving life

tenant. On the contrary, there is every indication that he intended the interest of each life tenant to terminate and "revert" to his heirs with the death of each as it occurred.

We think the trial court erroneously concluded that Fred Bush was entitled to a life estate in the whole of the property of S. D. Barganier, as the last surviving life tenant. We hold that Fred Bush, as a matter of law, is entitled to an undivided one-fourth interest in the property for the balance of his life.

The judgment appealed from is, therefore, reversed and remanded.

Reversed and remanded.

HEFLIN, C. J., and MADDOX, FAULKNER and JONES, JJ., concur.