In the Matter of the Living Trust Created by the Decedent, John G. WALZ, Prior to his Death, for Lorraine I. Walz, Donald Walz, and Jacqueline Keown.

**Donald Walz and Jacqueline Keown, as Appellants**

v.

**Lorraine I. Walz; Michael Scot Walz; and Hoosier State Bank of Indiana, as Trustee and Appellees.**

No. 3–1280A373.

Court of Appeals of Indiana, Third District.

July 27, 1981.

J. Philip Klingeberger, Komyatte & Freeland, P.C., Highland, for appellants Donald Walz and Jacqueline Keown.

M. Jean Rawson, Munster, for appellees Lorraine I. Walz and Michael Scot Walz.

STATON, Judge.

■ As trustee for the inter vivos trust of John Walz, Hoosier State Bank petitioned the probate court for instruction.[1] One issue presented to the probate court was whether Michael—a child adopted by John Walz after his execution of the trust—was a beneficiary under the following provisions:

"The balance of the income may be accumulated by the trustee or in its discretion may be distributed among the de-

---

1. Ind.Code § 30–4–3–18(a)(1976) provides:
   "If there is reasonable doubt with respect to any matter relating to the administration of the trust, the trustee is entitled to be instructed by the court."

scendants of the Grantor, per stirpes. Upon the death of Lorraine I Walz, the remainder of the trust property shall be divided and distributed among the children of the Grantor, namely Donald Walz and Jacqueline Keown, equally, share and share alike or to the Grantor's descendants per stirpes, as their absolute property forever."

The probate court found Michael to be both an income and remainderman beneficiary under these provisions. We reverse.

John and Lorraine Walz were married in 1966. From previous marriages, John had two children, Donald Walz and Jacqueline Keown; Lorraine had one child, Michael. On August 18, 1971 John executed a trust and transferred substantial property to the trustee. John Walz adopted Michael six months thereafter on February 8, 1972.

The majority of the trust provisions are specific and unambiguous. During his lifetime, John was entitled to the "earnings, avails and proceeds" of the trust. Upon his death, the trust property was to be divided into two trusts—Trust A and Trust B. Specifically identified property was to be transferred to Trust A for the benefit of John's mother. The remainder of the corpus—and the Trust A property upon the death of John's mother—was to be transferred to Trust B. The provisions of Trust B, *in toto*, are as follows:

"In the event that Lorraine I Walz, is his surviving spouse, then and in that event, the trustee shall pay and deliver to her in regular installments for as long as she remains his unremarried widow, one-third of the income from the trust, and she shall be permitted to live in the home owned by him at his death for the remainder of her life, without charge. The balance of the income may be accumulated by the trustee or in its discretion may be distributed among the descendants of the Grantor, per stirpes. Upon the death

of Lorraine I Walz, the remainder of the trust property shall be divided and distributed among the children of the Grantor, namely Donald Walz and Jacqueling Keown, equally, share and share alike or to the Grantor's descendants per stirpes, as their absolute property forever."

Donald and Jacqueline (appellants) argue that these provisions are a trust and not a testamentary disposition. They argue the probate code should not control the construction of inter vivos trust provisions. The essence of their argument is that the construction of this trust provision is controlled by the circumstances existing at the time the trust was executed. Michael (appellee), on the other hand, argues that Trust B is a "testamentary disposition of property" and, therefore, the trust should be construed as such. Michael forwards numerous probate statutes and cases controlling the construction of testamentary dispositions. In essence, Michael argues that the trust provision should be read as a "will" and controlled by the probate statutes. Although Michael's arguments are persuasive, we find the position taken by Donald and Jacqueline to be the correct application of the law.

Michael argues the disposition of property under Trust B is testamentary because it does not become effective until the death of the settlor, John Walz. He then pursues this argument through the Indiana Probate Code, Ind.Code §§ 29–1–1–1 et seq. (1976 & Supp.1980), and arrives at the following conclusion. Michael, an adopted child of the settlor, should be treated equal to the natural children of the settlor under the provisions of the trust. This conclusion fails for two reasons.

First, we are well aware the overall design of the Probate Code regarding the distribution of property is to treat an adopted child as a natural child of the adopting parents.[2] Michael, however, misperceives

2.  *See, e. g.,* IC 29–1–2–8 ("For all purposes of intestate succession, including succession by, through or from a person both lineal and collateral, an adopted child shall be treated as a natural child of his adopting parents. . . .");

IC 29–1–3–8(a) ("When a testator fails to provide in his will for any of his children born or adopted after the making of his last will, such child, . . . shall receive a share in the estate of the testator. . . .");

the issue. The issue is not whether an adopted child is to be treated equal to the natural children of the settlor of a trust. The issue is whether Michael who was adopted by John after the execution of his trust, comes within the provisions of the trust.

Secondly, Michael's argument must fail in that the provisions of an inter vivos trust are not controlled by the Probate Code. There are several compelling reasons for this conclusion. The Legislature has clearly pronounced its favor with inter vivos trusts as a means of disposing of property; and, has specifically exempted such instruments from the exactitudes of testamentary executions:

> "An instrument creating an inter vivos trust in order to be valid need not be executed as a testamentary instrument pursuant to section 503, even though such trust instrument reserves to the maker or settlor the power to revoke, or the power to alter or amend, or the power to control investments, or the power to consume the principal, or because it reserves to the maker or settlor any one or more of said powers."

IC 29–1–5–9. The Legislature has approved non-testamentary instruments which allow the settlor to retain many of the benefits of the property and to dispose of it during life.

▌ The inter vivos trust is a unique legal entity. Through its use, the settlor may transfer property to a trustee reserving for the life of the settlor the beneficial use of the property with the remainder to designated beneficiaries. Although the settlor enjoys the beneficial use of the trust property until his death that trust property is not subject to the administration of his estate. *Leazenby v. Clinton County Bank & Trust Co.* (1976), 171 Ind.App. 243, 355 N.E.2d 861. That is, the trust property is not in the decedent-settlor's estate. The Probate Code, which controls the distribu-

tion of decedent's property, does not control the inter vivos distributions of property.

In *Smyth v. Cleveland Trust Co.* (1961), 172 Ohio St. 489, 179 N.E.2d 60, the surviving wife challenged the validity of her husband's creation of an inter vivos trust. The Ohio Supreme Court explained the distinction between the inter vivos distribution and the testamentary distribution:

> "Where, as here, a settlor transfers, assigns and sets over to a trustee title to property owned by him in proceeding to create a trust *inter vivos*, the interest therein passes immediately to the trustee, and the trust is consummated even though the trust instrument reserves to the settlor the income for life, an absolute power to revoke the trust in whole or in part and the right to control investments and further to modify the trust in any respect. Where the remainder over at his death is to be held for the benefit of his wife for life and later to be distributed to his heirs . . ., there is created, at the instant of creation of the trust, a vested equitable interest in the remaindermen subject to defeasance in whole or in part by the exercise of the power to revoke or modify. . . .

> "It is asserted that the trust was not executed in conformity to the laws applicable to wills, that it is colorable and illusory, and, because of the reserved powers, that the trust constitutes nothing more than an agency.

> "If a settlor by his declaration shows that he does not intend that the trust shall be created and exist until his death, even though the trust property and the beneficiaries are ascertained prior to his death, the disposition is testamentry. 'On the other hand, if by his declaration the settlor creates a trust during his lifetime, the mere fact that the enjoyment of the interest of the beneficiary is postponed until the death of the settlor, and the fact that the settlor reserves power to revoke

IC 29–1–6–1(d) ("In construing a will making a devise to a person or persons described by relationship to the testator or to another, any person adopted prior to his twenty-first (21st)

birthday before the death of the testator shall be considered the child of his adopting parent or parents. . . .").

or modify the trust, does not make it testamentary.' "

172 Ohio St. at 501–02, 179 N.E.2d at 68–69 (citations omitted).

■ This well defined distinction strongly argues against the application of the Probate Code to inter vivos distributions even though such distributions may have certain testamentary characteristics. Stronger still is the argument that an individual transfering property during his life should not be bound by the Probate Code which regulates the transfer of property after life. As in the case of *Smyth v. Cleveland Trust Co., supra,* Indiana recognizes that even though the grantor has the power to modify or revoke his inter vivos trust, the interest of the remaindermen vests at the time the trust is executed. *Loeb v. Loeb* (1973), 261 Ind. 193, 301 N.E.2d 349; *Colbo v. Buyer* (1956), 235 Ind. 518, 134 N.E.2d 45. When the inter vivos settlor creates his trust and transfers property thereto, he creates a present interest in the beneficiaries. The beneficial use of the property may well be delayed until some future date, but the interest vests immediately.[3] There is no comparable present vesting of testamentary dispositions. This strongly reinforces the conclusion that the inter vivos trust is a "during life" transfer which should not be controlled by the "after life" Probate Code.

■ We do not conclude that the Probate Code is totally inapplicable to inter vivos trusts. For example, we find the Probate Code to strongly represent the public policy of this state that an adopted child is to be treated as though the natural child of the adopting parent. We certainly give that strong public policy due consideration when construing trust terms. Or, for example, we may well refer to the rules for interpretation of wills, IC 29–1–6–1, under the Probate Code to *aid* our interpretation of trust provisions. As was stated in the case of *Warner v. Keiser* (1931), 93 Ind.App. 547, 569, 177 N.E. 369, 376–77:

**3.** In addition, such vested remainder interest may well be subject to defeasance; *see, e. g., Heilman v. Heilman* (1891), 129 Ind. 59, 28 N.E. 310, or subject to open; *see, e. g.,. Conger v.*

"Inasmuch as we are here dealing with a gift *inter vivos,* and a trust agreement executed in connection therewith, for the purpose of determining the intention of the donor, which must be given effect and permitted to control if possible, courts are not limited exclusively to the rules applying to such gifts, but may resort to those rules controlling in the construction of wills. Thus it is the first duty of the "court to ascertain the intention of the donor, if possible, and, having done so, to uphold and give effect to the gift, and, in this case, the trust agreement, if it can be done without violating any established rules of law...."

We agree that rules as well as probate statutes dealing with the construction of wills may be *resorted to* by a court when construing the provisions of a gift or trust. Those rules and statutes may well aid the court in determining the true intent of the settlor or donor. However, we do conclude that the Probate Code does not *control* the interpretation and construction of the terms of inter vivos trusts.

■ Prior to addressing the trust provisions before us, we note the following guidelines. In *Hauck v. Second National Bank of Richmond* (1972), 153 Ind.App. 245, 286 N.E.2d 852, this Court stated:

"The primary rule in construing trust instruments is that the court must ascertain the intention of the settlor and carry out this intention unless it is in violation of some positive rule of law or against public policy."

\* \* \* \* \* \*

"The plain and unambiguous purpose and intention of the settlor must be determined only from the terms of the instrument itself without taking individual clauses out of context and considering same without reference to the whole instrument...." (citations omitted)

153 Ind.App. 259–60, 286 N.E.2d at 861.

■ The polestar for construing trust provisions is the intent of the settlor. This

*Lowe* (1890), 124 Ind. 368, 24 N.E. 889, or subject to a condition precedent; *see, e. g., Dickey v. Citizens' State Bank of Fairmont* (1932), 98 Ind.App. 58, 180 N.E. 36.

guiding principle has been codified under the Trust Code, Ind.Code §§ 30–4–1–1 et seq. (1976 & Supp.1980).

> "The rules of law contained in this article shall be interpreted and applied to the terms of the trust so as to implement the intent of the settlor and the purposes of the trust. If the rules of law and the terms of the trust conflict, the terms of the trust shall control unless the rules of law clearly prohibit or restrict the article which the terms of the trust purport to authorize. . . ."

IC 30–4–1–3. The "intent" relevant to the construction of the inter vivos trust terms is that held by the settlor at the time the trust was executed. This is the basis of the following well established rule of trust construction: the settlor's intent must be determined from the facts and circumstances surrounding the settlor at the time of the execution of the trust. *Olivas v. Board of Nat. Missions of Presbyterian Church* (1965), 1 Ariz.App. 543, 405 P.2d 481; *Stryker v. Kennard* (1959), 339 Mass. 373, 159 N.E.2d 71; *In re Day's Trust* (1960), 10 A.D.2d 220, 198 N.Y.S.2d 760; *Smyth v. McKissick* (1943), 222 N.C. 644, 24 S.E.2d 621; *Cutrer v. Cutrer* (1961), 162 Tex. 166, 345 S.W.2d 513; *Makoff v. Makoff* (1974), Utah, 528 P.2d 797; *First Nat. Bank & Trust Co. v. Finkbiner* (1966), Wyo., 416 P.2d 224. Aptly summarized:

> "A fundamental rule is that the determination of the intention of the settlor or parties to a trust instrument involves a construction of the instrument, where construction is necessary, in the light of surrounding circumstances at the time of the execution of the instrument. The court places itself in the position of the trustor at the time of the creation of the trust and interprets what he has said or done in the light of his environment at that time. . . ." (footnotes omitted)

76 Am.Jur.2d *Trusts*, § 17, p. 266 (1975).

From this overview, we direct our focus upon the two bench marks which establish the line of our decision. First, the primary goal of this Court is to determine the intent of the settlor of the trust. That intent is to be discerned from an examination of the trust as a whole and not from individual clauses lifted out of context. That intent is also to be discovered in the light of the facts and circumstances surrounding the settlor at the time the trust was executed.

Second, the transfer of property to an inter vivos trust is the present disposition of property vesting a present interest in the beneficiaries of the trust. That transfer is the disposition of specific property which removes it from the settlor's estate. That transfer is a non-testamentary disposition.

■ Though we must examine the trust document as a whole, we also need to examine each of its parts which make that whole. For the purpose of clarity and for future reference, we repeat the two key sentences of Trust B and number them "I" and "II."

> "[I] The balance of the income may be accumulated by the trustee or in its discretion may be distributed among the descendants of the Grantor, per stirpes. [II] Upon the death of Lorraine I Walz, the remainder of the trust property shall be divided and distributed among the children of the Grantor, namely Donald Walz and Jacqueline Keown, equally, share and share alike or to the Grantor's descendants per stirpes, as their absolute property forever."

Within these two sentences we find the following three "classes" of beneficiaries. First, in sentence I there are the "descendants of the Grantor, per stirpes." Second, in sentence II there are the "children of the Grantor, namely Donald Walz and Jacqueline Keown." And third, also in sentence II, there are the "Grantor's descendants per stirpes."

We must assume John Walz used the term "descendants" consistently in sentences I and II. That is, by using the term "descendants," John intended to benefit the same class of beneficiaries. The phraseology surrounding "descendants" in sentences I and II are obviously distinguishable. However, to find "descendants of the

Grantor, per stirpes" a class of beneficiaries different from "Grantor's descendants per stirpes" would ignore the plain meaning of these words. We therefore find these two "classes" of beneficiaries are the same. Thus, we are left only with two classes of beneficiaries: 1) the children of the grantor, namely Donald and Jacqueline; and, 2) the grantor's descendant's per stirpes [or descendants of the grantor, per stirpes].

Sentence II contains both of these "classes" of beneficiaries. We first note sentence two connects these two classes of beneficiaries with the disjunctive "or." The use of the disjunctive was not—we believe—meant to give the trustee the discretion between which class to benefit. An examination of the trust as a whole shows an overall scheme by John Walz to transfer specific property to the trust for the benefit of specific individuals both during and after his life. It would be unreasonable to assume, therefore, that John Walz intended to give the trustee discretion regarding beneficiaries.

The reasonable interpretation is that "or" reflects the intent of John Walz to provide for the event of the first class of beneficiaries failing. That is, should the class of the "children of the Grantor, namely Donald . . . and Jacqueline" fail—for example, Donald or Jacqueline may die prior to Lorraine—then the remainder would be distributed to the "Grantor's descendants per stirpes."

It is also to be noted that after the disjunctive "or," John inserted the phrase "per stirpes." In the context of interpreting wills, several courts have held that "per stirpes" is ordinarily used to denote substitution in the event of the death of the primary legatee. See, e. g., St. Louis Union Trust Co. v. Greenough (1955), Mo., 282 S.W.2d 474; Fidelity Union Trust Co. v. Farley (1940), 127 N.J.Eq. 346, 13 A.2d 313; In re Fiske's Estate (1949), 195 Misc. 1017, 88 N.Y.S.2d 446; In re Grimm's Estate (1971), 442 Pa. 127, 275 A.2d 349; Guthrie v. First Huntington Nat. Bank (1971), 155 W.Va. 496, 184 S.E.2d 628. We find an analogous use of the phrase in this provision. Clearly the second "class" of beneficiaries in sentence II is only relevant should the first "class" in sentence II fail.

Thus we have reduced the three "classes" of beneficiaries to one class. We are left to examine the primary class of beneficiaries under the Trust B provisions here in issue. That is appropriate, however, since the pivotal language of Trust B is the specific limitation by John Walz in the final sentence to his named children—Donald and Jacqueline. Although Trust B contains three classes of beneficiaries in its final two sentences, it is the phrase "namely Donald Walz and Jacqueline Keown" which is the axis upon which this decision turns. Without that key phrase the "classes" of beneficiaries become general in nature. With that key phrase, however, the "classes" are specifically limited to two beneficiaries—Donald and Jacqueline.

This specific limitation is consistent with the overall scheme of John Walz's inter vivos trust. John transferred specific property to the trust for his specific benefit during his life. Upon his death, he provided for specific property of the trust corpus to be transferred to Trust A for the specific benefit of his mother. He specifically created Trust B. John specifically named Lorraine as life beneficiary rather than some general description such as "my then wife." He provided for specific property to benefit Lorraine during her life. Thereafter, in the provisions here in issue, John specifically named Donald and Jacqueline. We think it significant that John did not specifically name Michael.

▓▓ It is a well established rule for the construction of will provisions that gifts to named individuals—also described by a reference to a class to which they belong—are presumed to be gifts to the individuals named and not a gift to the class. See, e. g., Cates v. Bush (1976), 295 Ala. 256, 326 So.2d 742; Davis v. Arkenberg (1967), Fla.

App., 195 So.2d 46; *National Bank of Georgia v. First Nat. Bank of Atlanta* (1975), 234 Ga. 734, 218 S.E.2d 23; *Leibrandt v. Adler* (1961), 30 Ill.App.2d 257, 174 N.E.2d 228; *Iozapavichus v. Fournier* (1973), Me., 308 A.2d 573; *In re Belknap's Will* (1961), 29 Misc.2d 346, 218 N.Y.S.2d 19, *aff'd*, 16 A.D.2d 683, 227 N.Y.S.2d 893; *Newbern v. Barnes* (1969), 3 N.C.App. 521, 165 S.E.2d 526; 96 C.J.S. *Wills* § 693 (1957).

This presumption is applicable in the present case. Whether the disposition of property pursuant to a written instrument is inter vivos or testamentary has no effect upon this general rule. This *rule* is merely an aid to the courts in discerning the actual intent of the testator regarding the individuals benefited under the instrument. Thus, we feel, the language of the trust creates a presumption by specifically naming Donald and Jacqueline. The benefits of the trust were intended to specifically benefit Donald and Jacqueline rather than the "children" of John Walz. We find this presumption conclusive when the following factors are considered.

We focus upon the facts and circumstances surrounding John at the time he executed the trust. We again emphasize the important distinction of the inter vivos trust from the testamentary disposition. On the date of execution, John Walz was presently transfering his interest to the trustee and vesting the beneficial interest presently in the beneficiaries of the trust. On date of execution, John had two children—Donald and Jacqueline. On the date of execution, he had been married to his second wife—Lorraine—for approximately six years. During his second marriage, Michael had lived with John and Lorraine. On the date of execution, John used the terminology "descendants," "per stirpes" and "children"—all in reference to the trust's grantor, John.

On the date of the execution of the trust, those terms had a very significant and specific meaning under the facts and circumstances surrounding John Walz. John could

not but be aware that he was divorced and remarried, had two children from his previous marriage and that his second wife had one child from her previous marriage. John first used the term "descendants of the Grantor" in sentence I. At the time of the execution of the trust—had John died immediately thereafter—the only "descendants" of John were Donald and Jacqueline. Descendant is generally understood to mean an heir in the direct descending line. *West v. West* (1883), 89 Ind. 529. As defined in Black's Law Dictionary 530 (4th ed. 1968), a descendant is

> "[o]ne who is descended from another; a person who proceeds from the body of another, such as a child, grandchild, etc., to the remotest degree."

Clearly, Michael—the child of another and not yet adopted—was not a descendant of John at the time the trust was executed.

To the phrase "descendants of the Grantor" in sentence I, John added the term "per stirpes." Per stirpes means literally by roots or stock. *St. Louis Union Trust Co. v. Greenough* (1955), Mo., 282 S.W.2d 474; *In re Day's Trust* (1960), 10 A.D.2d 220, 198 N.Y.S.2d 760; Black's Law Dictionary 1294 (4th ed. 1968). The phrase descendants per stirpes clearly expresses an intent for the trust benefits to be conferred upon the root or stock issue of John. At the date of execution, the only such persons were Donald and Jacqueline.

John then continues in sentence II with the term "children of the Grantor." At the time of the execution of the trust the only children of John were Donald and Jacqueline. John Walz underlines his intent by specifically naming those children: "namely, Donald Walz and Jacqueline Keown." John did not state "my children, namely Donald, Jacqueline and Michael." Nor did John state "my children, including those born or adopted hereafter." John stated, "my children" and then named those children. Then, at the end of sentence II John again refers to his descendants per stirpes. And again, at that date, John's descend-

ants—his stock or root—were Donald and Jacqueline.

Thus we conclude the phrase "children of the Grantor, namely Donald . . . and Jacqueline" was intended to benefit only Donald and Jacqueline. To this phrase John attached the language "or the Grantor's descendants per stirpes." As noted above, this language provides a substitution class of beneficiaries should the first class (Donald and Jacqueline) fail. We think the intent of John is clear and is reflected by the prior "class" of named beneficiaries in sentence II and the facts and circumstances surrounding John at the time of execution. John intended to provide the remainder interest of Trust B to his children, namely Donald and Jacqueline, or their descendant's per stirpes should one or both fail to survive Lorraine.

And finally, sentence I provides discretionary income to the "descendants of the Grantor, per stirpes." We are convinced the intent of John Walz was to provide the discretionary income to Donald and Jacqueline or their descendants per stirpes. First, the term "descendants" must be interpreted consistently throughout the trust. The above interpretation provides that consistency between the use of the term descendants in sentences I and II—the only place where it is used in the trust instrument.

Secondly, at the time the trust was executed, Donald and Jacqueline were the only children and thus "descendants" of John Walz. An individual may have additional children either by birth or adoption. An individual's "descendants" is a changing class as births, adoptions and deaths occur. The naming of two children or descendants, however, specifically limits the broader class. It is a clear reflection of the settlor's intent.

John spelled out in Trust B his intent to benefit his children and descendants, Donald and Jacqueline. At the date of the execution of the inter vivos trust, his only children and descendants were Donald and Jacqueline. Again, the inter vivos trust is not a testamentary instrument. It is not intended to operate at the time of the death of the settlor but at the time of its execution. It must be examined, therefore, in light of the facts and circumstances existing at the time of its execution.

And thirdly, this interpretation is demanded from an examination of the trust document as a whole. The entire trust establishes a design of specific property benefiting specific individuals. The overall scheme of the trust provides for only specifically named beneficiaries. Sentences I and II of Trust B—when examined together in context—continue that scheme. Although those two sentences contain indefinite terms such as "children" and "descendants," the indefinite terms are specifically limited to two named beneficiaries—Donald and Jacqueline. The overall scheme of the trust is one of specificity and the above interpretation fulfills that scheme.

The probate court is therefore reversed. Trust B of the John Walz inter vivos trust is to be administered as follows: Donald Walz and Jacqueline Keown are the discretionary income beneficiaries during the life of Lorraine. Upon the death of Lorraine, they are the remainder interest beneficiaries.

GARRARD, J., concurs.

HOFFMAN, P. J., concurs in result.