Lisa **RETSECK**, Appellant–Petitioner,

v.

**FOWLER STATE BANK, Successor Trustee of Trust Under Will of Myrtle Avery,** Appellee–Respondent.

No. 04A03–0205–CV–160.

Court of Appeals of Indiana.

Feb. 7, 2003.

Laura J. Wyatt, P.C., Chesterton, IN, Attorney for Appellant.

John T. Casey, Blaney, Casey & Walton, Rensselaer, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Lisa Retseck appeals from the trial court's order that Lisa is not an "intended [sic] beneficiary" of the Last Will and Testament of Myrtle Avery ("Will"). Appellant's Appendix at 10.[1] She presents one issue for our review, whether a class was created in which Lisa is a member. In its brief, the Trust requests that it be awarded attorney fees.[2]

We affirm.

Myrtle Avery ("Myrtle") had two sons, Robert and Maurice. On August 25, 1967, she executed a will in which she divided her estate into halves, bequeathing half of the estate to Maurice and appointing him trustee over a trust of the other one-half created for the benefit of the children of Robert. The relevant sections, all contained in Part II of the Will, establishing the trust for her grandchildren, state:

> "2) . . . In making this Will, I desire to create *a trust for the benefit, support, maintenance and education of the children of Robert D. Avery,* and for the use, benefit and support of Robert D. Avery after his children are grown.

> \*     \*     \*

> 4) . . . I do give, devise and bequeath to Maurice P. Avery, in trust, however, *for the use, benefit, support and education of the children of Robert D. Avery, named as follows: Robert D. Avery, Jr., John Fremont Avery, Mary Sue Avery, and William Avery,* and for the use and

---

1. Although the trial court used the phrase "intended beneficiary," it is clear that the court's order states that Lisa is not a beneficiary.

2. The interested parties opposing Lisa's petition, namely the children or descendents of Robert D. Avery specifically mentioned in the Will, were treated as intervenors and will be referred to as the "Trust."

benefit of my son, Robert D. Avery, as hereinafter provided.

(a) This trust is created primarily *for the use and benefit of the children of Robert D. Avery, as heretofore named, and for their support, maintenance and education,* but in the event my son, Robert D. Avery, should, during the existence of this trust, be in need of food, clothing, medical care, or other actual maintenance, then the Trustee shall herein have the right and power to use the proceeds of such trust for such purposes.

\* \* \*

(c) The Trustee shall have the power and authority to use the earnings of the trust estate, or so much of the principal as in his opinion may be necessary, at any time, *for the support, maintenance or education of the children of Robert D. Avery,* with the Trustee being the sole judge as to the method or propriety of such expenditures.

\* \* \*

(f) The Trustee shall hold the property devised to him in trust, subject to the provisions herein contained, *until the youngest of the children of Robert D. Avery, as heretofore named, shall become twenty-three years of age. Upon the youngest of said children becoming twenty-three years of age,* then the trust so created shall no longer constitute a trust for the use and benefit of the children of Robert D. Avery but shall then and thereafter continue during the lifetime of Robert D. Avery as a trust for his sole use and benefit.

\* \* \*

(h) In the event Robert D. Avery should precede me in death, or should the said Robert D. Avery die during the existence of the trust herein created, then the trust so created shall continue *for the use and benefit of his children, and upon the youngest of said children becoming twenty-three years of age, the trust estate shall then be divided equally among such children and the trust shall then cease and terminate.* Likewise, upon the death of Robert D. Avery *after the youngest of his children shall become twenty-three years of age, the trust estate shall then be divided equally among his children and the trust shall then terminate.* If, however, any of such children shall die leaving a child or children surviving, distribution shall then be made to the children of Robert D. Avery, and the children of the child so dying shall then take their parent's share in the trust estate." Appellant's App. at 40–42. (emphasis supplied).

At the time the Will was executed, Lisa had not yet been born. Rather, Lisa was born on January 6, 1970, of the marriage of her mother, Florence, to her natural father, Robert MacDonald. Subsequent to Lisa's birth, Florence married Robert D. Avery.[3] On February 5, 1982, Robert D. Avery adopted Lisa.

█ Lisa contends that she should receive a share of the trust estate upon the death of her father because the Will states that "upon the death of Robert D. Avery after the youngest of his children shall become twenty-three years of age, *the trust estate shall then be divided equally among his children* and the trust shall

**3.** The record is unclear as to the date of Myrtle's death. However, the Will was initially filed with the Clerk of the Lake Circuit Court prior to September 20, 1972. Therefore, the date of Myrtle's death is sometime previous to the date of filing of the Will.

then terminate." Appellant's App. at 42. (emphasis supplied). She asserts that because the language of this provision of the Will provides for a distribution of the assets to the children generally, it does not specifically limit the beneficiaries of the final distribution of the trust assets to those four grandchildren for whom the trust had originally been created. She asserts that Myrtle intended to create a class gift to all of Robert's children regardless of whether the child was entitled to the trust earnings prior to the final distribution of the trust estate.

The Trust counters that Lisa cannot be deemed a beneficiary of the Will because the "stranger-to-the-adoption" rule applies.[4] In the alternative, the Trust argues that the language creating the trust indicates that Myrtle's intent is clear in indicating that Lisa is not an intended beneficiary and does not receive any property in the final distribution of the trust assets. It is this second contention which controls in this case.

■■■ The interpretation, construction, or legal effect of a will is a question to be determined by the court as a matter of law. *Hershberger v. Luzader*, 654 N.E.2d 841, 842 (Ind.Ct.App.1995), *trans. denied.* Our primary focus is upon the intent of the testatrix in construing the language of a will. *Id.* We look to the four corners of the will and the language used in the instrument in determining the testatrix's intent. *Id.* Also, the will in all its parts must be considered together. *Epply v. Knecht*, 141 Ind.App. 491, 496, 230 N.E.2d 108, 111 (1967). When construing the language of a will, the court should strive to give effect to every provision, clause, term, or word if possible. *Hershberger*, 654 N.E.2d at 843.

In *Matter of Walz*, 423 N.E.2d 729 (Ind. Ct.App.1981), this court reviewed the language employed in establishing an inter vivos trust to determine whether the settlor intended to include his adopted son as a trust beneficiary. In that case, the settlor had two children by a previous marriage. At the time he executed the trust, the settlor had remarried and his wife had a child from her previous marriage who lived with settlor and his wife. Approximately six months after establishing the trust, settlor adopted his wife's son. The language of the trust document which was in question stated:

"Upon the death of Lorraine I Walz, the remainder of the trust property shall be divided and distributed *among the children of the Grantor, namely Donald Walz and Jacqueline Keown*, equally, share and share alike or to the *Grantor's descendants per stirpes*, as their absolute property forever." *Id.* at 731. (emphasis supplied).

In determining the appropriate beneficiaries of the trust, this court noted that courts interpret instruments establishing both inter vivos and testamentary trusts for the actual intent of the individual establishing the trust. *Id.* at 736. In deciding that the adopted son was not a beneficiary of the trust, this court analyzed the several different phrases used to describe the beneficiaries and determined that the settlor, aware that he had only two children who were his "root or stock issue," intended to exclude his future adopted son as a trust beneficiary. *Id.* at 736. In so holding, this court noted that an individual's descendants is a changing class as births, adoptions, and deaths occur. *Id.* at 737. When specific children within that

---

4. The "stranger-to-the-adoption" rule (*See Lutz v. Fortune*, 758 N.E.2d 77 (Ind.Ct.App. 2001), *trans. dismissed)* is contained in Ind.

Code § 29–1–6–1(d) (Burns Code Ed. Repl. 2000) and is discussed *infra.*

class are named, however, the broader class is limited and the settlor's intent is clear. *Id.*[5]

Lisa relies upon this court's holding in *Hershberger*, in which this court reviewed the language of a will bequeathing the testatrix's estate to her grandnephews and grandnieces. In the clause of the will disposing of the residuary of the estate, the testatrix ordered that the assets be divided equally among her grandnephews and grandnieces, and further, she listed the names of the beneficiaries, excluding one grandnephew. In previous portions of her will, the testatrix had listed the grandnephews and grandnieces generally and had made no limitation on the class by listing specific individuals. The grandnephew, whose name was excluded from the clause distributing the residuary, requested that the court determine that his name was left out because of an oversight. This court, however, reading the will as a whole, determined that had the testatrix meant to include the omitted grandnephew as a recipient of the residue of her estate, she would not have listed specific individuals but would have used the same general language which had been used throughout the rest of the will. *Hershberger*, 654 N.E.2d at 844. Lisa asserts that the Will in this case is similar to the will in *Hershberger* in that Myrtle used both general and specific language, indicating that she intended to draw distinctions among the classes of recipients for the various types of distributions arising out of the trust. However, we must disagree.

Reviewing the language of the relevant portions of the Will, one can readily ascertain that Myrtle frequently alternated between the use of general and specific language in referring to the beneficiaries of the trust. The first reference to the children of Robert D. Avery is general and established that the trust is for the "benefit, support, maintenance and education of the children of Robert D. Avery." Appellant's App. at 40. This language does not limit the beneficiaries of the trust; rather, from this language, all of Robert D. Avery's children, whether born or adopted before or after the will was written, would seem to be included. However, the next reference to the children of Robert D. Avery specifically limits the beneficiaries of the trust to the four children specifically named in the will. Following this specific limitation on the beneficiaries of the trust, the Will then made several references to the specific class of beneficiaries by employing the use of the terms "heretofore named," "said children," and "such children." *Id.* at 41–42. Nevertheless, the Will also made several references to the beneficiaries of the trust by using the general term "children" without any limiting language. *Id.* at 40–42.

There can be no dispute, and indeed the parties agree, that the proceeds from the trust, which were payable throughout the years since the trust was established, were solely for the benefit of the four grandchil-

---

5. The *Walz* decision involved an inter vivos trust rather than, as here, a testamentary trust. The court noted that the provisions of an inter vivos trust are not controlled by the Probate Code. Nevertheless, the court acknowledged that the public policy enunciated in the Probate Code to the effect that "an adopted child is to be treated as though the natural child of the adopting parent" was entitled to strong consideration when construing terms of a trust. 423 N.E.2d at 733.

That consideration, however, was held to not alter the manner in which the words used in the trust instrument were to be construed. In so holding, the court stated, apropos of the case before us, "It is a well established rule for the construction of will provisions that gifts to named individuals—also described by a reference to a class to which they belong—are presumed to be gifts to the individuals named and not a gift to the class". *Id.* at 735.

dren named in the Will. This is so even in light of the use of the general term "children" without any qualifiers in several locations. The reason for this is that Myrtle's intent in providing for the four named grandchildren was clear.

It also appears that Myrtle's intent was to provide for only those same four grandchildren in the final distribution of the trust assets. The clause outlining the conditions for final distribution of the trust assets was set forth in the same subpart of the Will which provided for the support of the specifically named grandchildren. It would be difficult, if not impossible, to deduce from the mixed use of general and specific terms, and their placement in close proximity, that Myrtle intended to give the term "children" different meanings. In fact, it is noteworthy that Part II, subpart 4 of the Will is where Myrtle makes her first declaration that the trust be maintained for the use, benefit, support, and education of the four named grandchildren. Every other instruction relating to the disbursement of proceeds from the trust, including the final distribution of the trust assets, is included under this subpart. Also, subpart (4)(f) states that the trust is no longer to be used for the benefit of the children when the youngest of the "children of Robert D. Avery, heretofore named," becomes twenty-three years of age. Appellant's App. at 41. In subpart (4)(h), one of the conditions for the final distribution of the trust assets is that the youngest of the children become twenty-three years of age. It would be inconsistent to read this condition in subpart (4)(h) to be different than that in subpart (4)(f), and further, it would be illogical to interpret the term "children" in subpart (4)(h) to be specific to the four named grandchildren for the purpose of satisfying the conditions to terminate the trust but to read it to be general, and thereby including Lisa, for the purpose of distributing the trust

assets. Moreover, had Myrtle intended to recognize and provide for grandchildren that may have been born after her Will was executed, she could have clearly stated that such was her intention in light of her specific recognition by name of her grandchildren at the time she executed the Will. Based upon these considerations, the trial court did not err in determining that Lisa was not a member of the class to receive a share of the trust assets upon final distribution. There is no means by which this court can determine that Myrtle's intent was anything other than to maintain only the four previously named grandchildren as beneficiaries of the final distribution of the trust assets.

■ In its brief, the Trust requests attorney fees by asserting that Lisa could not be a beneficiary of the final distribution of the trust assets. The Trust specifically asserts that Lisa was precluded by Ind.Code § 29–1–6–1(d) (Burns Code Ed. Repl.2000) from receiving a share of the trust assets.

■ Indiana Appellate Rule 66(E) allows for the assessment of damages if an appeal, petition, motion, or response is frivolous or in bad faith. The assessment of damages is discretionary and may include attorney fees. *Id.* Appellate damages for lack of merit should be applied only when the appellant's contentions and arguments are utterly devoid of all plausibility. *Lutz v. Fortune,* 758 N.E.2d 77, 85 (Ind.Ct.App.2001), *trans. dismissed.*

The Trust's request for attorney fees hinges upon whether Lisa could have received a share of the trust assets, or rather, whether she was automatically precluded by statute. Further, the Trust assumes that the appeal is in bad faith and that Lisa purposefully failed to cite the statutory authority relating to the "stranger-to-the-adoption" rule. With this we do not

agree. It is not apparent from the material before us that Lisa purposefully and in bad faith failed to cite relevant statutory authority. Further, her contention that she was a member of the class who should receive a share of the trust assets was not devoid of all plausibility.

Addressing the contention that Lisa failed to cite relevant statutory authority, we note that neither party directed the trial court to the statute and that no mention was made of the statute by the trial court. It would be improper to assess damages against Lisa for failing to do something at trial which the Trust also failed to do. That the Trust has now located what it believes to be relevant authority precluding Lisa's claim does not entitle it to attorney fees.

As stated above, our decision does not rest upon the statutory embodiment of the "stranger-to-the-adoption" rule. However, to fully assess whether the Trust's claim for attorney fees has merit, we must address the "stranger-to-the-adoption" rule in some detail. As originally created, the "stranger-to-the adoption" rule provided that when one made provision for her own children in a will, an adopted child was deemed to be included unless there was something in the will or in the extraneous circumstances to rebut said presumption. *Beck v. Dickinson*, 99 Ind.App. 463, 469, 192 N.E. 899, 901 (1934). However, when one made provision for the child or children of some person other than herself, it was deemed that the testatrix did not intend to include the adopted child of that other person unless there was something in the will or the extraneous circumstances to rebut said presumption. *Id.*

Since that time, the General Assembly has amended the "stranger-to-the-adoption" rule by enactment of the 1953 Probate Code. *See Lutz*, 758 N.E.2d at 82–83. However, *Lutz* did not explicitly state what effect the changes may have had on the rule. Indiana Code § 29–1–6–1(d) states in relevant part:

> "In construing a will making a devise to a person or persons described by relationship to the testator or to another, any person adopted prior to the person's twenty-first birthday before the death of the testator shall be considered the child of the adopting parent or parents and not the child of the natural or previous adopting parents."

While this language does seem to imply that Lisa could not be included in the Will because she was not adopted prior to Myrtle's death, we have found no case, nor has the Trust directed this court to any, which has interpreted the relevant portion of the statute. We note that under the "old rule," whether the adopted child was to be included or excluded from the will was a presumption which could be rebutted by something in the will or through extraneous circumstances. We say this only to acknowledge that it is likely that it would still be possible, based upon the circumstances of a particular case, that a party could establish that she was an intended beneficiary of a will even though she was not adopted prior to the testatrix's death. To determine otherwise may be to construe a will against the testatrix's intent. It is in this light that Lisa contends in her reply brief that had she been given the opportunity to respond to this argument during the trial, she may have been able to show that she was not excluded by presenting evidence of the date of her parent's marriage and the death of her grandmother. From this, one presumes that Myrtle knew Lisa and it may have been possible for Lisa to remove herself from the controlling language of the statute. However, Lisa has been unable to convince this court that it is possible to construe the Will so as to include her as a beneficiary.

Regarding the plausibility of Lisa's argument, it is not beyond reason to conclude that the use of general language, such as employed in the Will, would create a class of which Lisa may have been a part. However, such is not the case here. Nevertheless, while we have determined that her claim must fail, it was not devoid of all plausibility, and indeed, a review of the case law demonstrates that the use of both general classifications and specific limiting language may, in some cases, result in the determination that the testatrix intended to create different classes of beneficiaries. The Trust's request for attorney fees is denied.

The judgment of the trial court is affirmed.

BAILEY, J., and MATHIAS, J., concur.