KATHLEEN C. DEMELLO *vs.* MANUEL C. DEMELLO, trustee, and others.[1]

Bristol.   November 15, 1984. — December 4, 1984.

Present: PERRETTA, DREBEN, & KASS, JJ.

*Devise and Legacy,* Identity of beneficiary, Gift to widow of another. *Trust,* Construction.

Under a will providing for the establishment of a trust which included as a beneficiary the surviving widow or widower of any of the testator's six children, provided such person was living at the time of the testator's death, income was to be distributed to the widow of one of the testator's sons, who entered into a second marriage with her after the testator's death, where the circumstances, including the fact that one of the testator's daughters was unmarried at the time the will was executed, warranted the conclusion that the testator intended to benefit the widows and widowers of all her children, and not only those persons who were married to her children at the time of execution of her will or at the time of her death. [70-71]

CIVIL ACTION commenced in the Bristol Division of the Probate and Family Court Department on April 28, 1983.

The case was heard by *Edwin Livingstone, Jr., J.*

*Daniel C. Perry* for the plaintiff.

*Frederick W. Holbrow* for the defendants.

DREBEN, J. The plaintiff brought this action claiming that she, as a "surviving widow," is an income beneficiary under the will of her mother-in-law, Jacintha C. DeMello. A Probate judge held she was not and entered summary judgment for the defendants. We reverse.

Jacintha C. DeMello left all of her property in trust as follows:

---

[1] Manuel C. DeMello, Joseph C. DeMello, Mary C. Rodrigues, Clementina C. Ponte, and M. Carmen DeMello, beneficiaries of the trust.

"To pay the income to my children — Manuel C. De-Mello, Angelo C. DeMello, Joseph C. DeMello, John C. DeMello, Clementina C. DeMello, and Mary C. Rodrigues — equally during the life of each; and upon the death of each to add his/her undistributed income to his/her share of the principal and pay the net income of said child to his/her surviving widow or widower who is living at the time of my death during his/her widowhood; . . .."[2]

The parties stipulated to the following facts. Jacintha died in February, 1961, leaving six children. Her will was executed in April, 1953, at a time when Clementina, one of her children, was unmarried.[3] On June 24, 1963, after Jacintha's death, Angelo, a son of Jacintha, whose first wife had died in Decem-

---

[2] The remaining dispositive terms of the trust are as follows:

". . . and upon the death of each child and remarriage or death of his/her said widow or widower to distribute said child's share of the principal together with all undistributed income to the then living sons and daughter [*sic*] of said child who attain the age of 21 years when each attains said age and if any of said grandchildren of mine die before reaching the age of 21 years his/her share of the principal shall be distributed to his/her brothers and sisters who are 21 years of age at that time at the time of his/her death. If any of my children die without being survived by children or is survived by children but none attain the age of 21 years, after the remarriage or death of his/her said widow or widower the share of said child so dying shall remain in the principal of the trust fund including all unpaid income and the net income thereof shall be paid equally to my children who survive said child so dying and his/her said widow or widower's widowhood (if any), and upon the death of each of my said surviving children his/her share in this additional principal and undistributed income shall be distributed to his/her then living children who attain the age of 21 years when each attains said age and if any of said grandchildren of mine die before reaching the age of 21 years his/her share of the principal shall be distributed at the time of his/her death to his/her brothers and sisters who are 21 years of age at that time (it being understood that no widow or widower of any of my children shall get any income of this so-called additional principal). Upon the death of all my children and the remarriage or death of their said spouses any amount left in the principal of said trust fund shall at that time be distributed to all my then living grandchildren by right of representation."

[3] Clementina married on November 11, 1953.

ber, 1962, entered into a second marriage with the plaintiff, Kathleen. He died in 1982. Kathleen was a life in being at the time of Jacintha's death. The trustee made some payments to Kathleen after Angelo's death but has ceased to make such payments.

Jacintha's intent must be ascertained from the entire instrument, giving "due weight to all its language, considered in the light of the circumstances known to [her] at the time of its execution . . . ." *Hill* v. *Aldrich*, 326 Mass. 630, 632 (1951). *Stryker* v. *Kennard*, 339 Mass. 373, 377 (1959). All parties acknowledge that the purpose of the clause — "who is living at the time of my death" — which modifies the words "widow or widower" was to guard against violation of the rule against perpetuities. See *Hill* v. *Aldrich*, 326 Mass. at 632; Leach, Perpetuities in a Nutshell, 51 Harv. L. Rev. 638, 644 (1938) ("A provision in the will that the life estate to the widow is dependent upon her being born in the life of T[estator] saves the remainder").

Relying on the following language in *Hill* v. *Aldrich*, 326 Mass. at 633, the defendants argue that the term "widow" does not include Kathleen. "Where an estate is given to a person described by relation either to the testator or to other devisees, on a contingency that may or may not happen, and a person is in being at the time of the execution of the will, to whom, on the happening of the contingency, the description would apply, it is a safe general rule to hold such person as intended to be the devisee." *Id.* In *Hill,* language similar to that used by Jacintha[4] was construed to exclude a widow of a child of the testatrix who married a second time after the death of the testatrix. In *Stryker* v. *Kennard,* 339 Mass. at 378, however, the Supreme Judicial Court referred to the rule in *Hill* as being "one of construction, not one of law," and said, "A rule of this character must yield whenever a testator or settlor expresses

---

[4] The relevant language in *Hill* was: "to pay over to the husband or widow of such child, if a husband, twenty-five thousand dollars from the principal, and if a widow, an annuity of six thousand dollars for and during her natural life from the net annual income of said trust fund . . . ." *Hill* v. *Aldrich,* 326 Mass. at 631-632.

an intention to dispose of property in a manner inconsistent with the result obtained by the application of the rule." The *Stryker* court found such a contrary intention in a provision for the settlor's grandchildren which made reference to a "succeeding wife" of her son. A widow of a subsequent marriage was held entitled to take under language providing an income interest to a widow of the settlor's son.[5]

We think the fact that Clementina was unmarried at the time Jacintha executed her will indicates that she did not intend to limit the term "widow or widower" to mean those persons who were married to her children at the time of the execution of her will. Nor is there any indication in the instrument that she intended to benefit only those persons who were married to her children at the time of her death. For example, it would make no sense to exclude a spouse of Clementina if Jacintha had died before Clementina's marriage.

As we construe her will, Jacintha intended to benefit the widows and widowers of her children. Since not all her children were married at the time she drew her will, we hold, as in *Stryker* v. *Kennard,* that Jacintha's intent is not consistent with the rule of construction applied in *Hill* v. *Aldrich.* Accordingly, the judgment dismissing the complaint is reversed, and a new judgment is to enter declaring that the plaintiff is a beneficiary entitled to income under the will of Jacintha.

*So ordered.*

---

[5] In *Stryker* v. *Kennard,* 339 Mass. at 374-375, the trust provided that on the death of the settlor's son, Waldo, the income was to be paid "to his wife as long as she remains his widow, and on the decease of said Waldo and on the death of remarriage of his wife to divide said income equally among the children then living of said Waldo Kennard by his present wife Irma Evelyn or by any succeeding wife, the issue of any deceased child to take the parent's share by right of representation . . .."