[No. D017351. Fourth Dist., Div. One. Nov. 23, 1993.]

WELLS FARGO BANK, as Trustee, etc., Petitioner and Respondent, v. DONNA MARSHALL, Claimant and Appellant; ALISA MARSHALL, Claimant and Respondent.

## COUNSEL

Hendrix & Aller, Glenn A. Davis and Andrew T. K. Aller for Claimant and Appellant.

Gray, Cary, Ames & Frye, Melitta Fleck and Mildred V. Basden for Petitioner and Respondent.

Judith M. Copeland for Claimant and Respondent.

## OPINION

**HUFFMAN, J.**—This case requires us to make a de novo interpretation of certain language in the Arthur Leonard Marshall Trust. Wells Fargo Bank, as

trustee, brought a petition in the probate court for an order construing the trust instrument. (Prob. Code, § 17200, subd. (b)(1).)[1] The probate court ruled that respondent Alisa Marshall (Alisa), the granddaughter of the trustor Arthur Leonard Marshall (the trustor) and daughter of the trustor's son John Samuel Marshall (Sam) by his first marriage, should obtain distribution of the trust assets to her or her guardian, and that appellant Donna Marshall (Donna), the surviving second wife of Sam, should receive nothing under the trust. The probate court also made related orders regarding payment of attorney fees. Donna has appealed the order construing the trust and two of the attorney fees orders.

We agree with Donna that the evident intent of the trustor was that she, as the surviving wife of Sam, should obtain a life income from the trust, even though she was not yet married to Sam at the time that the trustor died. We therefore reverse the order construing the trust instrument and the order that Donna should not obtain payment from the trust of attorney fees on appeal. However, we affirm the probate court's order for payment of Alisa's attorney fees during the period she was a minor.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 1970 the trustor wrote the prospective trustee of a trust, Bank of America, a one-page letter listing the provisions he wanted to have in a trust agreement to be drawn up by the bank. The letter specified gifts in set amounts to be given to two colleges and several relatives, and then stated: "All of the remainder of the trust to be held by the bank and the entire net income to be paid to Mrs. Katherine G. Marshall, my divorced [sic] wife, during her lifetime and on her death the entire income to be paid to John Samuel Marshall, my son during his lifetime. *On his death the income to go to his wife, if he has one, during her lifetime.* On the death of the survivor of the two, the trust to be distributed in full to the legal issue of John Samuel Marshall. If there is no issue, then distribute the entire estate to Dartmouth College, Hanover, N.H." (Italics added.)

In September 1970 the trustor signed a trust agreement that had been drawn up, evidently by bank officials or attorneys, which included the same provisions as expressed in the trustor's letter, with two changes (deleting a specific gift to Dartmouth College and adding a specific gift to a nephew). After the specified gifts to relatives and to one college were made, the trust agreement provided that the residue of the trust estate would continue to be held by the trustee and would be administered and distributed as follows: (1) The former wife of the trustee, Katherine G. Marshall, would receive all of

---

[1] All statutory references are to the Probate Code unless otherwise specified.

the net income from the trust during her lifetime; (2) after the death of the survivor of the trustor and his ex-wife, the son of the trustor, Sam, would receive all of the net income from the trust estate during his lifetime; (3) "If upon the death of John Samuel Marshall he is married and living with his wife, *if such wife was living at the time of the Trustor's death*, the Trustee shall pay to or apply for the benefit of such wife, all of the net income from the trust estate during her lifetime." (Italics added.)[2]

The trust further provided that the trustee could in its discretion invade the principal of the trust for the benefit of either the trustor's ex-wife, Sam, or Sam's wife "while she is a beneficiary under the terms of this trust." With regard to final distribution of trust assets, the trust provided:

"(6) After the death of the survivor of the Trustor, Katherine G. Marshall, John Samuel Marshall and John Samuel Marshall's wife, should she be a beneficiary under the terms of this trust, the Trustee shall distribute and deliver all of the then residue of the trust estate to John Samuel Marshall's surviving issue, by right of representation. If there should be no such surviving issue, then all of the residue shall be distributed and delivered by the Trustee to Dartmouth College, Hanover, New Hampshire.

"(7) Unless sooner terminated in accordance with provisions hereinabove set forth, this trust shall in any event cease and terminate upon the death of the last survivor of the Trustor, Katherine G. Marshall, John Samuel Marshall and the wife of John Samuel Marshall should she be a beneficiary under the terms of this trust."

The trust then provides that if the right of any beneficiary to payments from the trust income or principal shall terminate, "either by reason of death or otherwise," the beneficiary entitled to the next successive interest should receive distribution.

In November 1970, two months after the trustor signed the trust, Sam married his first wife Alice. Their daughter Alisa was born in September 1974.

The trustor died in 1980, never having amended the trust. Sam and Alice divorced in 1981. In 1982, Sam married Donna, and remained married to her until his death in 1991. Sam and Donna had no children together.

Shortly after Sam's death, the successor trustee, Wells Fargo, petitioned the court to interpret the trust, particularly on the issue of whether Donna, as

---

[2]In the original, there is no apostrophe after the "r" in trustor's; we have added one rather than add "*sic*" to each reference.

Sam's second wife, was the wife specified by the trust language, "if such wife was living at the time of the trustor's death," as entitled to a life income from the trust estate. The trustee stated that the use of the words "such wife" was ambiguous and subject to two possible interpretations: (1) Identifying any person married to Sam at his death so long as she was also alive when the trustor died, or (2) identifying that wife surviving Sam who was also his wife when the trustor died. If Donna were not entitled to receive trust income, the trust assets would have to be distributed to Alisa.

At the time the trustee's petition was filed, Alisa was a minor, so the probate court appointed her a guardian ad litem. (§ 1003.) Before ruling on the petition, the court ordered that attorney fees for all three parties, the trustee, Donna, and Alisa's guardian ad litem, would be paid by the trust, one-half from principal and one-half from income.

After hearing the matter by telephone conference, the court issued a minute order stating that distribution would be made to Alisa or her guardian if she were a minor at the time of distribution. A formal order was prepared by the trustee's attorney, stating that the phrase "if such wife was living at the time of the Trustor's death" indicated that the trustor intended income to be paid to a wife of his son who was known to the trustor and who remained married to the trustor's son until the son's death. The court ruled that Donna did not qualify to receive trust proceeds because she was not Sam's wife known to the trustor at the time of the trustor's death and who remained married to Sam until his death. Donna appealed that order.

Donna then brought a motion for an order allowing the trust to pay her attorney fees on appeal. Alisa's guardian filed opposition, and the motion to allow fees was denied. Donna amended her notice of appeal to include that order denying fees.

Thereafter, the trustee filed another petition seeking instructions, requesting an order stating that the guardian ad litem's appointment was terminated as of Alisa's 18th birthday on September 24, 1992, and that the guardian was not entitled to payment by the trust for services rendered after the September 29, 1992, hearing on the motion for attorney fees on appeal. The court allowed payment of fees to the guardian ad litem through the date of the hearing on the motion, since it had been noticed while Alisa was a minor, and also ordered the order construing the trust instrument stayed on appeal without an undertaking. Donna appeals that order insofar as it allows the trust to pay attorney fees to the guardian ad litem.

### DISCUSSION

■ " 'The interpretation of a written instrument, including a . . . declaration of trust, presents a question of law unless interpretation turns on the

competence or credibility of extrinsic evidence or a conflict therein. Accordingly, a reviewing court is not bound by the lower court's interpretation but must independently construe the instrument at issue. [Citations.]' [Citations.]" (*Scharlin* v. *Superior Court* (1992) 9 Cal.App.4th 162, 168 [11 Cal.Rptr.2d 448].) ■ "In construing a trust instrument, the intent of the trustor prevails and it must be ascertained from the whole of the trust instrument, not just separate parts of it. [Citation.]" (*Ibid.*)

■ In interpreting a document such as a trust, it is proper for the trial court in the first instance and the appellate court on de novo review to consider the circumstances under which the document was made so that the court may be placed in the position of the testator or trustor whose language it is interpreting, in order to determine whether the terms of the document are clear and definite, or ambiguous in some respect. (*Estate of Russell* (1968) 69 Cal.2d 200, 208-210 [70 Cal.Rptr. 561, 444 P.2d 353].) Thus, extrinsic evidence as to the circumstances under which a written instrument was made is admissible to interpret the instrument, although not to give it a meaning to which it is not reasonably susceptible. (*Id.* at p. 211.) ■ On review of the trial court's interpretation of a document, the appellate court's proper function is to give effect to the intention of the maker of the document. (*Id.* at p. 213.)

Particularly in the field of interpreting trusts and wills, each case depends upon its own peculiar facts, and " '. . . precedents have comparatively small value. . . .' " (*Estate of Lawrence* (1941) 17 Cal.2d 1, 6 [108 P.2d 893]; *Estate of Russell*, *supra*, 69 Cal.2d at pp. 210-211.) It is the intention of the trustor, not the trustor's lawyer, which is the focus of the court's inquiry. (*Estate of Lindner* (1978) 85 Cal.App.3d 219, 226 [149 Cal.Rptr. 331].) We shall first apply these principles to the question of whether Donna is entitled to a life income from the trust, and then turn to the appeal of the attorney fees orders.

I

■ This dispute focuses upon the trust language providing that if, upon Sam's death, he was married and living with his wife, she would receive a life income from the trust "if such wife was living at the time of the Trustor's death." This language is ambiguous when all the circumstances surrounding the making of the trust are considered. (*Estate of Russell*, *supra*, 69 Cal.2d at pp. 208-209.) Accordingly, it is proper for this court on de novo review to consider together the trustor's letter to the proposed trustee and the trust language itself, written a month apart, "as evidence tending to disclose ambiguity in the words used and to aid in its resolution. [Citation.]" (*Estate of Lindner*, *supra*, 85 Cal.App.3d at p. 226.)

Although the trust shows two changes from the content of the letter (i.e., deleting the specific gift to Dartmouth College and adding a specific gift to a nephew), those two changes are not significant when the rest of the dispositions are considered, particularly since Dartmouth College was made the residuary beneficiary. At the time the trust was executed, Sam was not yet married, and during the 10 years that the trustor lived after the trust was executed, he never amended it to add the names of either Sam's first wife or Sam's daughter. We first observe that the trustor's failure to take action to specifically include Sam's first wife Alice or his daughter Alisa as named beneficiaries under the trust has some significance. "[A] testator's failure to execute a new will or to alter a preexisting one is an exercise of the right to testamentary disposition and is the equivalent of having drawn up a new will." (*Estate of Murphy* (1979) 92 Cal.App.3d 413, 421-422 [154 Cal.Rptr. 859].)

Moreover, neither the letter nor the language of the trust identifies a wife of Sam by name or place of residence. The letter generally states that the income would go to Sam's wife, if he had one, during her lifetime upon his death. This portion of the letter was differently phrased in the trust, where the concept was added "if such wife was living at the time of the trustor's death." Two possible purposes for such language are evident. First, such a reference to one of the lives measuring the duration of the trust has been acknowledged to be a clause inserted to guard against violation of the rule against perpetuities. (*Hill* v. *Aldrich* (1951) 326 Mass. 630 [96 N.E.2d 147, 149] [" '. . . any widow of my son, surviving him as shall be living at my decease' "]; *DeMello* v. *DeMello* (1984) 19 Mass.App. 68 [471 N.E.2d 406, 407] [" 'who is living at the time of my death' "].)[3] In the alternative, the specified trust language could be, as Alisa claims, a specific reference to the wife to whom Sam was married at the time of the trustor's death. To determine which of these characterizations of this trust language is more accurate, we next consider whether the trustor's intent was more consistent with naming Sam's wife as a potential category of persons, or as a specific person to whom a specific gift was intended to be made.

There is a dearth of relevant California authority. Several out-of-state cases have construed similar trust (or testamentary) language referring to the

---

[3]The common law rule against perpetuities is the "[p]rinciple that no interest in property is good unless it must vest, if at all, not later than 21 years, plus period of gestation, after some life or lives in being at time of creation of interest. [Citations.]" (Black's Law Dict. (6th ed. 1990) p. 1331.) In 1991, section 21200 et seq. was enacted as the statutory rule against perpetuities, codifying the validating side of the common law rule, and establishing a "wait-and-see rule" for the invalidating aspect of the rule. (Cal. Law Revision Com. com., West's Ann. Prob. Code, § 21205 (1994 pocket supp.) p. 39.)) This section supersedes Civil Code former section 715.2, the former statutory rule against perpetuities, which was in effect at the time this trust was executed.

spouse of a particular person as accomplishing a gift to the specific person who was the spouse at the time that the document was executed. In *Hill* v. *Aldrich, supra*, 96 N.E.2d 147, a Massachusetts court affirmed a probate court decree denying payment of an annuity to the second wife of the son of the testatrix, where the testatrix had provided that the surviving husband or wife of her deceased child should receive an annuity from the trust. The testatrix made the will in 1915, at a time when her son David was married to Astrid. The testatrix died in 1920, and in 1930 her son David married Hilda, who survived him. Thus, David was married to his first wife at the time the will was made, and the court followed a presumption that a testamentary gift to the widow of another is normally a gift only to that other's wife who was known to the testator. (*Id.* at p. 149.) The court stated, "This rule is particularly pertinent where the gift would be to the disadvantage of the lineal descendants of a testator and might result for an indefinite time in a diversion of income to some person who was unknown to him but might become his son's widow." (*Ibid.*) Thus, the lineal descendants of the testatrix were found to be entitled to distribution of the trust funds, since the second wife did not qualify for payment of the annuity.

In *Matheson* v. *American Trust Company* (1957) 246 N.C. 710 [100 S.E.2d 77, 75 A.L.R.2d 1408], the testator specified a gift to his brother and his wife, residents of a certain town, in equal parts for their lifetime. At the time the will was made, the testator's brother was married to a woman named Fairy, who outlived the testator by 11 years. After her death, the testator's brother married his second wife, Beulah, who survived him. The court found that Beulah was not entitled to receive any income from the trust, because the gift to the wife was not a class gift, since "[o]rdinarily . . . wives do not come as a class—they come one at a time." (*Id.* at p. 79.) The court stated: "A gift to a man and his wife is a gift to the wife living at the date of the will 'or living at the date from which the will is deemed to speak. [Citations.]' " (*Id.* at pp. 79-80.) The court found no indication in the will or the surrounding circumstances that anyone other than Fairy, the first wife, was intended to benefit under the will, because of the specification that she and the testator's brother lived in a certain town; this description effectively inserted her name in the will. (*Ibid.*; see Annot., Will—Donee—"Husband"—"Wife" —"Widow" (1961) 75 A.L.R.2d 1413, 1415-1422 & supp.)

Similarly, a Pennsylvania court in *In re Erny's Trust* (1964) 415 Pa. 8 [202 A.2d 30] decided that the time-of-deed wife, the first wife, was the only one for whom a life estate was intended, as opposed the time-of-death wife, who was thus denied a life income from the trust. (*Id.*, 202 A.2d at p. 31.) While noting that " '. . . the word wife can be used either to designate a specific

beneficiary, or in a generic sense,' " the court stated there was no inflexible rule of construction or presumption arising from the use of the word "wife." (*Id.* at pp. 31, 35-36.) The court considered the trust instrument as a whole in the light of all the circumstances under which it was made, and ruled that the trustor had intended by the word wife the only wife he knew as of the time that the trust deed was made, i.e., his first wife. (*Id.* at p. 40.) The court noted that an earlier Pennsylvania case reaching an opposite result, *In re Buzby's Estate* (1956) 386 Pa. 1 [123 A.2d 723], was sui generis in its facts[4] and was not controlling since each case deals with different language in the instruments construed and with different circumstantial backgrounds. (202 A.2d at p. 40; see also *Gannett* v. *Shepley* (1943) 351 Mo. 286 [172 S.W.2d 857].)

There is a different line of out-of-state cases which favors treating the term "wife" of a named beneficiary of a trust or will as referring to a potential category of persons, as opposed to a specific person who held that status at a particular time. In *DeMello* v. *DeMello, supra,* 471 N.E.2d 406, the court ruled in favor of a surviving widow who claimed to be an income beneficiary under the will of her mother-in-law. The mother-in-law's will was executed at a time when one of her six children was unmarried, and specified that the income from a testamentary trust was to be paid to the children equally during the life of each and, upon the death of each, a life income was to be paid to their surviving widow or widower who was living at the time of the testator's death. After the testator's death, one of her sons remarried, and the issue was whether the second wife qualified as a surviving widow or widower who was living at the time of the testator's death. (*Id.* at p. 407.) After discussing *Hill* v. *Aldrich, supra,* 96 N.E.2d 147 and *Stryker* v. *Kennard* (1959) 339 Mass. 373 [159 N.E.2d 71, 71 A.L.R.2d 1266], the court stated that the rule in *Hill* excluding a widow of a child of the testatrix who married a second time after the testatrix's death was one of construction, and that such a rule preferring the lineal descendants "must yield whenever a testator or settlor expresses an intention to dispose of property in a manner inconsistent with the result obtained by the application of the rule." (*Stryker, supra,* 159 N.E.2d at p. 74.)

In *DeMello* v. *DeMello, supra,* 471 N.E.2d 406, the court found it significant that one of the testator's six children was unmarried at the time the will was executed, and indicated that the testator thus could not have intended to limit the term "widow or widower" to those persons who were married to her

---

[4]In *In re Buzby's Estate, supra,* 123 A.2d 723, the court found for a number of reasons that the third or "time-of-death" wife of the testator's son was entitled to a life income from the trust, in part because the generic term "wife" was used in specifying that following the son, his wife and children should receive the trust income. (See *In re Erny's Trust, supra,* 202 A.2d at pp. 35-36.)

children either at the time the will was executed, or at the time of the testator's death. The will was construed as showing the testator's intent to benefit the surviving widows and widowers of her children, and that because such an intent was shown, the rule of construction applied in *Hill* v. *Aldrich* to prefer the lineal descendants was inapplicable. (*DeMello*, *supra*, at p. 408.)

Similarly, in *Greenwich Trust Co.* v. *Converse* (1923) 100 Conn. 15 [122 A. 916, 920], the court stated that where the will provided for the payment of income and principal to the unnamed wife of the testatrix's son, those provisions "were for the benefit of the wife as one of her son's 'family,' and were not otherwise for the personal benefit of his then-wife, who is now divorced and remarried; and further, that his present wife . . . takes in her place."

In *Matter of Trust of Killian* (Iowa 1990) 459 N.W.2d 497, the Supreme Court of Iowa was required to interpret the term "wife" under the terms of a trust giving the trustor's son a power of appointment to a share of the residuary trust estate, where the son was married to a prior wife when the trust was established, but was divorced and remarried after the trustor's death, and whose second wife survived him and claimed to be entitled to the power of appointment. The court declined to apply "the technical rule that the generic term 'wife' refers to the beneficiary's wife at the time the will was executed rather than a subsequent wife," because the apparent intent of the trustor was to the contrary. (*Id.* at p. 501.) Although the trustor referred to her own children by name, she used the generic terms wife and husband when referring to her children's spouses, and showed her desire "that the trust agreement accommodate her children's changing life circumstances." (*Ibid.*; see also Bogert, Law of Trusts and Trustees (rev. 2d ed. 1979) § 182, pp. 307-310 ["If the gift is to a beneficiary for life with a remainder interest to be distributed upon the beneficiary's death to his wife or widow, it has usually been construed to mean a gift of the remainder to the woman to whom the beneficiary was married at the time of his death, but the terms of the instrument may show that the settlor meant the woman to whom the beneficiary was married at the time the trust commenced." (Fns. omitted.)]; see also *In re Will of Hedrick* (1975) 80 Misc.2d 766 [364 N.Y.S.2d 407, 410] ["[I]t was the intent of the testatrix to provide for her son and her son's family as it may change from time to time, . . ."].)

Obviously, there are many fact situations that can arise in this context, and precedent is useful only for guidance as to general principles. (*Estate of Lawrence*, *supra*, 17 Cal.2d at p. 6.) However, from the above authority, we conclude it is significant that at the time the trustor executed this trust, his

son Sam was unmarried, and the trust language refers only generally to his son's wife, and was never amended to insert the name of his first wife or her place of residence to assist in identifying her. The trustor himself was divorced when the trust was drawn up, and must have recognized that it was possible that his then-unmarried son might some day be divorced. It seems unlikely, therefore, that the trustor intended that his son's first wife be the only person covered by this particular trust language. Rather, it is more likely that he intended to benefit whatever woman his son might be married to at the time of the son's death, and that his primary concern was providing for his son's generation rather than his son's children's generation.

Since the disputed term "if such wife was living at the time of the Trustor's death" does not appear in the trustor's letter to the bank, but only in the bank-drafted trust, it is a fair inference that that language was added as a technical term intended to deal with potential problems arising from the rule against perpetuities. (*DeMello* v. *DeMello, supra,* 471 N.E.2d at p. 407.) From the general manner in which this trust was drafted, we believe the trustor intended that the trust should accommodate his son's changing life circumstances, including divorce and remarriage. (*Matter of Trust of Killian, supra,* 459 N.W.2d at pp. 500-501.) Thus, the presumption set forth in *Hill* v. *Aldrich, supra,* 96 N.E.2d 147 for a preference for the lineal descendants must yield where the trustor's evident intent is inconsistent with such a presumption. (*Estate of Salmonski* (1951) 38 Cal.2d 199, 213 [238 P.2d 966]; *Stryker* v. *Kennard, supra,* 159 N.E.2d at p. 74.) The most reasonable interpretation of the trust language is that the woman married to and living with Sam at his death was intended to be the life income beneficiary, and Donna meets that description.

## II

Donna first appeals the fee order denying her motion for payment by the trust of her attorney's fees on appeal. Attorney fees on appeal were evidently allowed by the probate court, and that order upheld, in *Estate of Gilmaker* (1964) 226 Cal.App.2d 658, 664-665 [38 Cal.Rptr. 270]. To require Donna to incur her own attorney fees to vindicate her position as a life income beneficiary would be contrary to the evident intent of the trustor. Donna is in equity entitled to be reimbursed for her fees on appeal, the precise source of which (i.e., principal or income) we leave to the probate court to decide.

However, to the extent that Donna has requested this court to render an advisory opinion that she will be entitled to apply to the trustee for its consideration of whether to invade the principal of the trust to reimburse her

expenses, we deem such issue prematurely presented; the trustee has not yet had the opportunity to consider any such application and to exercise its discretion upon it. "It is well settled that the courts will not attempt to exercise discretion which has been confided to a trustee unless it is clear that the trustee has abused his discretion in some manner. [Citations.]" (*Estate of Marre* (1941) 18 Cal.2d 184, 190 [114 P.2d 586].) We decline to decide issues not properly presented.

Finally, with respect to the February 1993 order allowing the trust to pay Alisa's attorney fees for her guardian ad litem during the period of her minority (including fees for a hearing noticed during that time), we decline to disturb the order of the probate court allowing those reasonable expenses. (§ 1003, subd. (c).) Under sections 16040, subdivision (a) and 17200, subdivision (a), the trustee had a fiduciary obligation to seek court approval of such fees if they were unreasonable, and the trustee in its discretion saw no need to do so. This was a reasonable determination and no further action by the probate court or this court to determine the reasonableness of such fees is necessary.

### DISPOSITION

The order construing the trust instrument is reversed with directions to the probate court to enter a new order declaring Donna Marshall to be a beneficiary entitled to income under the trust. The order denying Donna attorney fees on appeal is likewise reversed, with directions to the probate court to order such fees paid by the trust as the court shall in its discretion decide. The order allowing payment from the trust of attorney fees for Alisa's guardian ad litem is affirmed. Costs on appeal to appellant Donna Marshall.

Todd, Acting P. J., and Froehlich, J., concurred.