Filed 3/17/14  In re Pressman Family Trust CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In the Matter of the SHIRLEE PREISSMAN Family Trust. | 2d Civil No. B247561 <br> (Super. Ct. No. 1371651) <br> (Santa Barbara County) |
| GERALD PARENT, <br><br>    Petitioner and Appellant, <br><br> v. <br><br> NICHOLAS HINTON, et al, <br><br>    Objectors and Respondents. | |

      This appeal involves a dispute between the income beneficiary and remainder beneficiaries of a trust.  Gerald Parent, the special trustee of the trust, appeals from an order favoring respondents Nicholas Hinton and Dakota Hinton, the remainder beneficiaries, over Simon Beriro, the income beneficiary.  The order pertains to distributions made for the purpose of maintaining Beriro's residences.  For the year 2011 the order requires appellant to allocate these distributions entirely to trust income, instead of one-half to income and the other half to principal, thus reducing the net income available for distribution to Beriro.  The order also directs appellant to pay from trust income the future costs of maintaining Beriro's residences.  To the extent that trust income is insufficient for this purpose, appellant may not pay these costs from principal

without first considering Beriro's ability to pay them himself.  We conclude that the trial court misinterpreted the trust instrument.  Accordingly, we reverse.

*Factual and Procedural Background*

In November 2003 Shirlee Preissman signed an amendment and restatement of the Shirlee Preissman Family Trust (the Family Trust).  Preissman was married to Simon Beriro and had three children by a former husband, now deceased.  Upon Preissman's death, the Family Trust provides for the distribution of various gifts and the funding of a "GST Exempt Trust."  The balance of the trust estate is to be divided into two equal parts.  One part shall be distributed to the "Marital Trust."  The property in the Marital Trust "shall be held by the Trustees in trust for [Beriro] for his lifetime."  The trustees shall pay to him all of the "net income" of the Marital Trust.  " 'Net income' means the total receipts allocated to income during an accounting period minus the disbursements made from income during the accounting period . . . ."  (Prob. Code, § 16328.)  Upon Beriro's death, the remaining property of the Marital Trust shall be distributed to the issue of Preissman's daughter, Alex Hinton.  The issue are respondents Nicholas Hinton and Dakota Hinton (Preissman's grandchildren).

Article 8.3 of the Family Trust provides: "The Trustees [of the Marital Trust] may distribute to [Beriro] at any time during his lifetime that amount from trust principal, up to the whole estate, as the Trustees may determine to be reasonably necessary for [his] health, education, maintenance and support in a manner enjoyed by [Preissman] during [her] lifetime. . . . *In exercising this discretion, the Trustees shall take into consideration other income and property available to [Beriro].*"  (Italics added.)

Article 21.14 of the Family Trust concerns Preissman's residence.  "Residence" is defined as "that dwelling or dwellings . . . in which [Preissman] normally lived prior to [her] death."  The Family Trust provides: "The assets of the Marital Trust shall be used by the Trustees to maintain my [Preissman's] residence, including all adjacent land owned by me and the furnishings in the residence.  The Trustees shall pay from income or principal, or both, all liens and encumbrances on the residence; all taxes, insurance premiums, and costs for repairs, maintenance, and services rendered for the residence;

2

and all costs for utilities supplied to the residence, including telephone and cable. The Trustees shall also pay the expenses incurred by [Beriro] to employ persons to work in or about the residence."

Preissman died in November 2004. Beriro, who had been married to Preissman for more than 20 years, became sole trustee of the Marital Trust. Beriro appointed appellant as a Special Trustee. The Family Trust provides for such an appointment: "A Special Trustee shall have all the rights and powers granted to the Trustees under the Trust Agreement solely and exclusively with reference to the subject matter and duties and responsibilities specified by the persons appointing the Special Trustee, such as making discretionary distributions to certain beneficiaries . . . ."

Before Preissman's death, she and Beriro owned three residences as joint tenants. After her death, Beriro became sole owner as the surviving joint tenant. In May 2005 Beriro sold one residence and its contents for more than $7 million. He continued to live in the remaining two residences: a co-operative apartment in the Pierre Hotel Building in New York City and a residence in Aspen, Colorado.

In July 2012 appellant filed a petition for settlement of the fourth account covering the period from January 1, 2011, through December 31, 2011. Appellant allocated one-half ($241,776.79) of the cost of maintaining the two remaining residences ($483,553.59) to income and the other half to principal. During the accounting period, appellant paid $720,000 to or on behalf of Beriro: net trust income of $492,166.33, plus $216,742.05 for maintaining the residences, plus $11,091.62 in interest on amounts due to Beriro. The difference ($266,811.54) between the cost of maintaining the residences ($483,553.59) and the amount distributed to Beriro for this purpose ($216,742.05) was designated as "owed to [Beriro] and [was] listed as a liability." The amount of this liability ($266,811.54) was not distributed to Beriro because "there was insufficient cash available." At the close of the accounting period, the value of the trust property was $8,009,614.43.

Respondents objected to the petition. They contended that, without considering other income and property available to Beriro, appellant had invaded trust principal to pay the costs of maintaining Beriro's residences. Respondents claimed that, pursuant to Article 8.3 of the Family Trust, appellant should not have paid these costs out of principal because Beriro had sufficient assets to pay them himself. Thus, all of the residential maintenance costs should have been allocated to trust income instead of one half to income and the other half to principal. Appellant's actions allegedly constituted "an unreasonable impairment of the interests of [respondents] as residual beneficiaries of the principal."

The parties waived an evidentiary hearing. "[T]he matter was submitted to the court for decision based upon the moving and opposing papers, including the Declaration of Kirk R. Wilson," subject to appellant's objection to the admission of his declaration. Wilson is the attorney who drafted the Family Trust. Wilson declared that Preissman had intended to authorize the invasion of trust principal to maintain the residences only if the trust income was inadequate for this purpose and Beriro was unable to pay the maintenance costs out of his own assets.

*Trial Court's Ruling*

The trial court found: "There is clearly an imperfection in the writings, and it is appropriate to consider evidence of the circumstances under which the agreement was made or to which it relates, to explain the ambiguity." The court noted: "The declaration of attorney Kirk R. Wilson . . . supports the interpretation of [respondents]. It would clearly defeat the intent of the settlor to allow Simon Beriro to invade the trust principal when he has adequate resources to pay the expenses in question."

The court interpreted Article 8.3 as imposing upon appellant "a mandatory duty . . . to consider Simon Beriro's other income and property available to him before making distributions from principal" for the maintenance of the residences. The court concluded that appellant had failed to comply with this duty: "The court finds that . . . [appellant's] discretion was not exercised reasonably, and there was a failure to use judgment, in particular a failure to appropriately consider [Article] 8.3 of the Marital Trust. [Citation.]

4

To pay from principal all of the expenses of maintaining the residences [but appellant allocated half of the expenses to income and the other half to principal], without consideration of [Article] 8.3, essentially draining the liquid assets of the Marital Trust, was not reasonable."

The court ordered as follows: "[Appellant] shall allocate the expenses of maintaining the residences owned by Simon Beriro to trust income for 2011 and in the future, and (2) to the extent that the income of the Marital Trust is in the future inadequate to pay for the expenses of maintenance of the residences owned by Simon Beriro, . . . [appellant shall] take into consideration Simon Beriro's ability to pay such expenses before invading principal of the Marital Trust."

*Interpretation of Trusts and Standard of Review*

"[T]he primary rule in construction of trusts is that the court must, if possible, ascertain and effectuate the intention of the trustor or settlor. [Citations.]" (*Ephraim v. Metropolitan Trust Co. of Cal.* (1946) 28 Cal.2d 824, 834.) " ' "The interpretation of a . . . declaration of trust[] presents a question of law unless interpretation turns on the competence or credibility of extrinsic evidence or a conflict therein." ' " (*Wells Fargo Bank v. Marshall* (1993) 20 Cal.App.4th 447, 452-453.) The parties concur that the facts are undisputed and that the de novo standard of review applies. " ' "Accordingly, [we are] not bound by the lower court's interpretation but must independently construe the instrument at issue. [Citations.]" [Citations.]' [Citation]." (*Id*., at p. 453.)

*The Family Trust Is Not Ambiguous on Its Face*

We perceive no facial ambiguity in the Family Trust. Article 8.3 is a general provision requiring the trustee of the Marital Trust to "take into consideration other income and property available to [Beriro]" before making *discretionary* distributions from trust principal for his "health, education, maintenance and support." The terms " 'support' and 'maintenance' are merely general terms used to describe a wide variety of various types of assistance designed to cover everyday living expenses . . . ." (*In re Marriage of Benjamins* (1994) 26 Cal.App.4th 423, 429.)

5

Article 21.14, on the other hand, is a particular provision that applies only to the residences in which Preissman lived before her death. It states that the trustee "*shall* pay from income or principal" whatever amount is needed to maintain these residences. (Italics added.) Article 26.22 provides: "The term 'shall' is mandatory and means that the . . . Trustees must take the designated action." Article 19.1 similarly provides, "Where this Trust Agreement states that the Trustees 'shall' perform an act, the Trustees are required to perform that act." Thus, irrespective of Beriro's financial situation, the trustee of the Marital Trust must pay from income or principal the amount necessary to maintain the residences. "Under well established principles of contract interpretation, '. . . when a general and particular provision are inconsistent, the latter is paramount to the former.' [Citations.] The specific language of [Article 21.14] overrides the general . . . provisions of [Article 8.3]." (*National Ins. Underwriters v. Carter* (1976) 17 Cal.3d 380, 386.)

Furthermore, the inclusion of the "other income and property available to [Beriro]" limitation in Article 8.3 and its omission in Article 21.14 indicate that the omission was intentional. (See *United States Fid. & Guar. Co. v. Annunziata* (1986) 67 N.Y.2d 229, 233 [492 N.E.2d 1206, 1208, 501 N.Y.S.2d 790, 792] [inclusion of provision in one clause of contract and omission of similar provision in another clause of the same contract "must be assumed to have been intentional under accepted canons of contract construction"].) If Preissman had intended that the trustee of the Marital Trust must consider Beriro's income and property before making distributions from principal to maintain the residences, she would have said so. "[W]hen courts construe an instrument, a judge is 'not to insert what has been omitted, or to omit what has been inserted . . . .' " (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 954, quoting from Civ. Code, § 1858.)

That this construction favors Beriro over the remainder beneficiaries is consistent with the "Rules of Construction" set forth in Article 25.1: "As to any questions of construction or interpretation of this Trust Agreement, the construction or interpretation that would favor my husband [Beriro] and my children, in that order, shall be adopted or applied."

*The Trial Court Erroneously Admitted Wilson's Declaration*

Although there is no facial ambiguity as to the meaning of Articles 8.3 and 21.14, extrinsic evidence of the circumstances surrounding the execution of the Family Trust was admissible to determine whether the trust instrument contains a latent ambiguity. (*In re Estate of Russell* (1968) 69 Cal.2d 200, 206-207.) "A latent ambiguity is one which is not apparent on the face of the will [or trust] but is disclosed by some fact collateral to it. [Citations.]" (*Id*., at p. 207.) "In order to determine initially whether the terms of *any written instrument* are clear, definite and free from ambiguity the court must examine the instrument in the light of the circumstances surrounding its execution so as to ascertain what the parties meant by the words used. Only then can it be determined whether the seemingly clear language of the instrument is in fact ambiguous. . . . 'The exclusion of parol evidence regarding such circumstances merely because the words do not appear ambiguous to the reader can easily lead to the attribution to a written instrument of a meaning that was never intended.' [Citation.]" (*Id.,* at pp. 208-209.)

The only extrinsic evidence is Wilson's declaration. Wilson declared that the "net income" payable to Beriro "was to be net of certain trust expenses, including the expenses of the Residences." Wilson continued: "To the extent income was insufficient to cover the expenses of the Residences, then the expenses of the Residences could be paid from principal of the Marital Trust as long as it met the criteria for a principal invasion." According to Wilson, that criteria is set forth in Article 8.3. He declared: "While the Family Trust at [Article] 21.14 provides for payment of the maintenance of the Residences from income or principal or both, Shirlee Preissman's intent was that the trustee would invade the principal of the Marital Trust only to the extent that Simon Beriro's income and other property which was readily available to pay such expenses was inadequate to pay his support and maintenance. If Simon [Beriro] needed the assets of the Marital Trust to maintain his Residences or pay his other support and maintenance expenses, because he did not have adequate other assets to do so, the[n] Shirlee Preissman wanted him to be able to use the Marital Trust assets to support himself."

The above statements by Wilson are his opinion of Preissman's intent. He did not say that Preissman had told him that she wanted the Article 8.3 criteria to apply to payments from principal to maintain the residences. Wilson declared that Preissman had told him that "she wanted to use trust funds to cover the maintenance costs for the Residences as long as [Beriro] continued to use and occupy those properties to allow him to continue to enjoy the Residences in the same manner that they had done during their lives together." Preissman's statement to Wilson is consistent with the trustee's payment from principal of residential maintenance costs without considering Beriro's income and property.

Wilson's opinion of Preissman's intent was inadmissible. "[I]t is proper for the trial court in the first instance and the appellate court on de novo review to consider *the circumstances* under which the document was made so that the court may be placed in the position of the testator or trustor whose language it is interpreting, in order to determine whether the terms of the document are clear and definite, or ambiguous in some respect. [Citation.]" (*Wells Fargo Bank v. Marshall*, *supra*, 20 Cal.App.4th at p. 453, italics added.) An attorney's opinion of his client's intent does not shed light upon the circumstances under which a document was made. "It is the intention of the trustor, not the trustor's lawyer, which is the focus of the court's inquiry. [Citation.]" (***Ibid***.) What Preissman said to Wilson during the preparation of the Family Trust is properly admissible; Wilson's surmise of her intent is not.

"If in the light of . . . extrinsic evidence [of the circumstances under which a will or trust was made], the provisions of the will [or trust] are reasonably susceptible of two or more meanings claimed to have been intended by the testator [or trustor], 'an uncertainty arises upon the face of a will [or trust]' [citation] and extrinsic evidence relevant to prove any of such meanings is admissible [citation]. . . . If, on the other hand, in the light of such extrinsic evidence, the provisions of the will [or trust] are not reasonably susceptible of two or more meanings, there is no uncertainty arising upon the face of the will [or trust] [citations] and any proffered evidence attempting to show an intention *different* from that expressed by the words therein, giving them the only

8

meaning to which they are reasonably susceptible, is inadmissible.  In the latter case the provisions of the will [or trust] are to be interpreted according to such meaning."  (*In re Estate of Russell*, *supra*, 69 Cal.2d at p. 211; see also *Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 73-74.)  "On appellate review, the trial court's threshold determination of ambiguity is a question of law [citation] and is thus subject to our independent review [citation]."  (*Appleton v. Waessil* (1994) 27 Cal.App.4th 551, 554-555.)

As related by Wilson in his declaration, the "circumstances" under which the Family Trust was made do not show that Article 21.14 is reasonably susceptible to an interpretation requiring the trustee to consider Beriro's income and property before paying from principal the maintenance costs of the residences.  Therefore, Wilson's declaration "attempting to show an intention *different* from that expressed by the words [in the trust instrument], giving them the only meaning to which they are reasonably susceptible, is inadmissible."  (*In re Estate of Russell*, *supra*, 69 Cal.2d at p. 211.)

*The Trustee Did Not Abuse His Discretion in Allocating the*
*Residential Maintenance Costs between Income and Principal*

Article 21.14 affords no guidance on the allocation of the residential maintenance costs between principal and income.  Therefore, the trustee of the Marital Trust has discretion to determine the allocation.  Article 21.6 provides: "The Trustees shall determine what is principal or income of the trust estate, and what items shall be charged or credited to principal or income, or both.  For example, Trustees['] fees, attorney's fees, accounting fees, and custodian fees shall be charged against income or principal, or both, in such proportion (or all against either income or principal) as the Trustees determine.  In exercising such discretion, the Trustees may use the California Uniform Principal and Income Act [CUPIA, Prob. Code, § 16320 et seq.] as a guide."

Respondents argue that, pursuant to section 16370 of the CUPIA, appellant should have allocated all of the residential maintenance costs to trust income because the income was sufficient to pay these costs.  Section 16370 is inapplicable since it does not apply to payments made to maintain property, such as Beriro's residences, that is not part of the trust estate.  Section 16370, subdivision (c) provides that a trustee shall disburse from

9

income "[a]ll of the . . . ordinary expenses incurred in connection with the administration, management, or preservation of trust property."

Even if section 16370 applied, appellant was not bound to follow it. Section 16335, subdivision (a)(3) of the CUPIA provides: "In allocating receipts and disbursements to or between principal and income," a fiduciary "[s]hall administer a trust or decedent's estate in accordance with this chapter [the CUPIA] if the trust or the will does not contain a different provision or does not give the fiduciary a discretionary power of administration." The Family Trust contains a different provision and gives appellant a discretionary power of administration. The Family Trust states that the trustees "may," not "must," use the CUPIA as a guide. Article 19.1 provides: "Where this Trust Agreement states that the Trustees 'may' do an act . . . , the Trustees are expressly permitted or authorized to do the act described, and their decision to do or not to do the act shall be made in the Trustees' sole and absolute discretion in the exercise of their fiduciary powers and duties. The decision of the Trustees as to all discretionary actions and decisions shall be conclusive and binding on all persons."

The "absolute" nature of the trustees' discretionary powers is made clear in Article 19.2: "The discretionary powers granted to the Trustees under this Trust Agreement shall be absolute. This means that the Trustees can act arbitrarily, so long as they do not act in bad faith, and that no requirement of reasonableness shall apply to the exercise of their absolute discretion. This does not mean that the Trustees may do as they please, but rather that I [Preissman] want the Trustees to use their own personal, subjective best judgment. For this purpose, I waive the requirement that the Trustees' conduct at all times must satisfy the standard of judgment and care exercised by a reasonable, prudent person."

"Where a trustee has exercised absolute powers, the trustee is entitled to a presumption that he has acted in good faith, and the burden is upon an objecting beneficiary to show a bad faith exercise of absolute powers. [Citations.]" (*Estate of Nicholas* (1986) 177 Cal.App.3d 1071, 1087.) The court did not find, and no evidence was presented, that appellant had acted in bad faith or had not used his "personal,

10

subjective best judgment" in allocating one half of the residential maintenance costs to principal and the other half to income. The court found that "the trustee's discretion was not exercised reasonably," but the Family Trust provides that "no requirement of reasonableness shall apply to the exercise of [the trustee's] absolute discretion." The court also found that the trustee had failed "to appropriately consider [Article] 8.3" of the Family Trust. But as we have discussed above, Article 8.3 does not apply to distributions for the purpose of maintaining the residences.

"It is well settled that the courts will not attempt to exercise discretion which has been confided to a trustee unless it is clear that the trustee has abused his discretion in some manner. [Citations.]" (*In re Marre's Estate* (1941) 18 Cal.2d 184, 190.) No abuse of discretion occurred here.

*Disposition*

The trial court's order dated February 1, 2013 is reversed. The matter is remanded for further proceedings consistent with this opinion. Appellant shall recover his costs on appeal.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

11

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara

_____


L. Donald Boden; Griffith & Thornburgh, for Appellant.


Susan H. McCollum and Marcus S. Bird; Holliston & Brace, for Respondents.