Filed 5/27/26  Estate of Reyes CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Estate of WILLIAM REYES, Deceased. | 2d Civ. No. B347987 (Ventura County Super. Ct. No. 2024PRTR024726) |
| PETER REYES,　　　Petitioner and Appellant,　　v.　EDWARD REYES,　　　Objector and Respondent. | |

Peter Reyes appeals a probate court order finding that his father properly amended a trust to disinherit Peter after his mother died.  The trust incorporated an exhibit that allowed amendment by a surviving spouse.  There is no ambiguity in the language of the trust.  Accordingly, we affirm.

FACTUAL AND PROCEDURAL HISTORY

*I. Declaration of Trust*

On April 27, 2011, spouses William Reyes and Julia Reyes executed a Declaration of Trust (Declaration), which created the Reyes Trust Dated April 27, 2011 (Trust). The Trust designated William and Julia[1] as trustees. Their sons, Peter and Edward, were named beneficiaries. Article IV of the Declaration permitted amendment by both trustees while they were alive: "During our joint lifetimes, we may amend any of the trust terms by a writing signed by both of us and delivered to the Trustee." It also stated, "No amendment shall be valid unless the Trustee accepts such, except for an amendment removing the Trustee." William and Julia signed the Declaration as settlors and trustees and had it notarized.

Article I of the Declaration required the Trustee to "distribute the trust estate according to the attached Exhibit A." Exhibit A, titled "Distribution of Trust," was neither signed nor notarized, and was attached following the Declaration's signature page.

Exhibit A contained terms for the distribution of Trust property while William and Julia were both alive, after the death of one of the spouses, and upon the death of the surviving spouse. Article II of Exhibit A stated that if Julia died first, William was required to allocate Julia's half of the community property and any of her separate property to a separate, irrevocable trust called the "Disclaimer Trust."

Article II, section B of Exhibit A allowed the surviving spouse to amend the remainder of the Trust: "After the death of

---

[1] Because all individuals have the same last name, we use first names for clarity.

the deceased spouse, the surviving spouse shall have the power to amend, revoke or terminate this trust but not any Disclaimer Trust."

Upon the surviving spouse's death, Exhibit A directed the successor trustee to hold the Trust estate for the life of Peter and Edward. The successor trustee had the discretion to distribute money to the sons and to allow either son to live rent free on William and Julia's home property.

## II. Amended and Restated Declaration of Trust

Julia died March 23, 2020. In April 2022, William executed an Amended and Restated Declaration of Trust, disinheriting Peter (Amended Declaration). The Amended Declaration states that by the terms of the previous Declaration, the Trust "may be amended by me as the surviving settlor at any time by an instrument in writing signed by me."

William declared: "I have transferred and delivered to myself as Trustee . . . all right, title, and interest in all of my real and personal property . . . in any form whatsoever, to be administered and distributed as provided in this instrument, together with any additional assets that may be added to this Trust." He stated his intent that "all real and personal properties owned by me" are "part of this Trust." The Amended Declaration includes the family home and all non-retirement bank and investment accounts. It does not mention the Disclaimer Trust.

The Amended Declaration provides that after William dies, Edward shall receive the Trust estate. William expressly stated that he "intentionally failed to provide" for Peter.

*III. Litigation*

William died April 8, 2023. On November 13, 2023, Edward's attorney mailed and emailed Peter a notice pursuant to Probate Code[2] section 16061.7 and a copy of the Trust documents.

In May 2024, Peter initiated a probate proceeding to suspend and remove Edward as trustee of the Disclaimer Trust and compel Edward to provide a copy of the Disclaimer Trust. In December 2024, in the same proceeding, Edward filed a petition for instructions pursuant to section 17200. Edward sought a finding that Exhibit A to the original Declaration was valid and allowed William to amend the Trust.

The trial court granted Edward's petition in part. It found that Exhibit A of the Declaration was a valid portion of the Trust executed by William and Julia. It also found that William could amend the Trust but not the Disclaimer Trust. On February 18, 2025, the court entered the order with its findings.

DISCUSSION

The principal question is whether Exhibit A to the Declaration permitted William to amend the Trust and disinherit Peter. For the following reasons, we conclude that it did.

*I. Standard of review*

Unless the interpretation of a trust depends on extrinsic evidence, the interpretation of the trust is reviewed de novo. (*Doolittle v. Exchange Bank* (2015) 241 Cal.App.4th 529, 539-540 (*Doolittle*).) Here, only the Declaration, Exhibit A, and the Amended Declaration were presented to the trial court. Because interpretation of the Trust documents does not turn on extrinsic evidence, we independently interpret the documents. (*Ibid*.)

---

[2] Statutory references are to the Probate Code, unless otherwise indicated.

4

Edward argues that the trial court's predicate finding, that Exhibit A was part of the original signed instrument, is a factual determination entitled to substantial evidence review.  We need not resolve that question because the result is the same under either standard.  As discussed below, the record unambiguously supports the conclusion that Exhibit A was incorporated into the Trust: the signed Declaration expressly references Exhibit A in both its Table of Contents and Article I, and the document would be incomplete without it.

*II. Analysis*

*1. Section 16061.8 does not bar Peter's challenge to the Amended Declaration*

Edward asserts that Peter is barred from challenging the contents of the Trust because he did not bring an action to contest the Trust within 120 days from service of the notice pursuant to section 16061.7, as set forth in section 16061.8.  That deadline, however, does not apply because Peter is not *contesting* the Trust under section 16061.7.  Rather, he seeks to invalidate the Amended Declaration so he can remain a beneficiary.  That is *enforcement* of a trust, not a trust contest and is not time-barred by the 120-day deadline.  (*Packard v. Packard* (2025) 108 Cal.App.5th 1284, 1292.)

*2. The Declaration and Exhibit A unambiguously allowed William to amend the Trust*

Peter argues that the original Declaration is ambiguous because Exhibit A is inconsistent with the Declaration.  We disagree.  Article IV of the Declaration governed amendment of the Trust while William and Julia were alive.  Exhibit A governed amendment after one of them died.

5

The Declaration stated that distribution of the Trust estate shall comply with Exhibit A. Exhibit A set forth the distribution of the Trust estate in three distinct scenarios: 1) while William and Julia were both alive, 2) after Julia died, and 3) after William, the surviving spouse, died.

If only Julia died, William was obligated to transfer Julia's half of the community property and her separate property to a Disclaimer Trust, which was separate and irrevocable. Exhibit A allowed William to amend, revoke, or terminate the Trust but not the Disclaimer Trust. In other words, the integrated Trust (including Exhibit A) allowed William to remove Peter as a beneficiary of the Trust *only*, not the Disclaimer Trust, after Julia died. He did so by executing the Amended Declaration in April 2022.

A written instrument is ambiguous when, considering the circumstances around its execution, its language is " ' "fairly susceptible to two or more constructions." [Citations].' " (*Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 74 (*Ike*).) The Declaration governed amendment of the Trust during the settlors' joint lifetimes. Exhibit A governed amendments by the surviving spouse after the other spouse died. While each amendment scenario is contained in a different document, the amendment provisions do not conflict. They are consistent and unambiguous.

Indeed, Peter does not argue that all of Exhibit A is void because it is unsigned, undated, and unnotarized. Exhibit A, after all, is the only place in the Trust that names him as a beneficiary. He provides no legal reason for voiding only the amendment provision while leaving the rest of Exhibit A in effect.

Peter suggests that perhaps the attached Exhibit A is not the real Exhibit A referenced in the Trust. He argues, "[f]or all

6

we know it could have been stapled to the Trust *after [Julia] passed*." But he provides no evidence that William fraudulently altered the Trust after Julia died by replacing the real Exhibit A with a version that allowed him to amend the Trust and disinherit Peter. This is speculation, and without more evidence, the trial court was not required to give the argument credence or hold an evidentiary hearing.

The intent of the transferor is determined from the instrument as a whole. (§ 21102, subd. (a).) All parts of an instrument are to be construed in relation to each other so as to form a consistent whole. (§ 21121.)

Article I of the Declaration directed the Trustee to "distribute the trust estate according to the attached Exhibit A." The Declaration's "Table of Contents" also identifies Exhibit A as a component of the instrument. Reading the instrument as a whole, as the Probate Code requires, Exhibit A is part of the Trust. By signing the Declaration, William and Julia adopted Exhibit A's terms as their own. Exhibit A's lack of a separate signature does not diminish its legal force as part of the instrument they executed.

When interpreting a trust instrument, its words "are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative." (§ 21120.) "All parts of an instrument are to be construed in relation to each other and so as, if possible, to form a consistent whole." (§ 21121.) Here, because the amendment provisions in Article IV of the Declaration and Article II, subdivision (B) of Exhibit A apply to two different scenarios, joint-lifetime amendment by both settlors, and post-death amendment by the surviving spouse, respectively, we need not

7

strain to give both provisions "some effect" as part of a consistent whole.  They address different circumstances and operate independently of one another.

### 3. *No extrinsic evidence was necessary*

Peter also contends that extrinsic evidence was required to determine the intent of William and Julia.  Extrinsic evidence, however, is only admissible to resolve an ambiguity in the trust document or a factual conflict.  (*Ike*, *supra*, 61 Cal.App.4th at p. 74 [extrinsic evidence admissible to resolve ambiguity in trust instrument].)  Extrinsic evidence may also be introduced to show that seemingly unambiguous language has a "latent ambiguity" which is subject to a different interpretation.  (*In re Estate of Russell* (1968) 69 Cal.2d 200, 207.)

For the reasons discussed above, there is no ambiguity between the Declaration and Exhibit A.  Nor did Peter proffer a factual conflict requiring resolution in an evidentiary hearing.  Peter never introduced extrinsic evidence in the trial court showing that the Trust documents are subject to more than one meaning or that Exhibit A was stapled to the Declaration after Julia's passing.  Accordingly, Peter forfeited any right to present extrinsic evidence.  (*Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635.)

Neither *Ike*, *supra*, 61 Cal.App.4th 51, nor *Wells Fargo Bank v. Marshall* (1993) 20 Cal.App.4th 447 (*Wells Fargo*), supports Peter's arguments.  Those cases turned on ambiguities in the trust instruments that required resolution.  (*Ike*, *supra*, 61 Cal.App.4th at pp. 74-76; *Wells Fargo, supra*, 20 Cal.App.4th at pp. 454, 457-458.)  "Particularly in the field of interpreting trusts and wills, each case depends upon its own peculiar facts, and

8

' "precedents have comparatively small value . . . ." ' " (*Wells Fargo*, at p. 453.)

Absent an ambiguity or factual conflict, there was no need for the trial court to hold an evidentiary hearing.

*4. The Amended Declaration did not amend the Disclaimer Trust*

Peter argues that even if Exhibit A and its amendment provision were effective, William impermissibly amended the entire Trust, including the Disclaimer Trust. This argument also fails.

Even though the Amended Declaration does not mention the Disclaimer Trust, Exhibit A provided that the Disclaimer Trust is separate and irrevocable. In the Amended Trust, William declared that it applied to his "real and personal property" that was "owned by [him]." William thus emphasized that the Restatement only pertained to property that was owned by him.

We agree with the trial court that the Amended Declaration pertained only to Trust property not included in the Disclaimer Trust.

*5. Julia intended to allow William to amend the Trust*

Finally, Peter maintains it was never Julia's intent that Peter be disinherited. The Trust's language answers this. Exhibit A reflected that after one spouse died, the surviving spouse could "amend, revoke or terminate" the Trust. As to William's portion of trust property, therefore, Julia intended William to have the ability to amend it in whatever way he chose, including eliminating Peter's distribution rights.

Peter's reliance on *Brock v. Hall* (1949) 33 Cal.2d 885 (*Brock*) is misplaced. The doctrine in *Brock* implies gifts to fill gaps where a trust is silent and has no application here where

9

the instrument expressly addresses the surviving spouse's power to amend. (*Id*. at p. 891.)

*6. Peter's contentions raised for the first time on appeal are barred*

Peter contends for the first time on appeal, that a letter written by Edward's trust administration counsel referring only to the 2011 Trust shows the original Trust, and not William's amendment, is operative. A post-execution letter by counsel, however, sheds no light on the settlors' intent at the time of execution. (§§ 21101, 21102, subd. (a).)

Peter also argues for the first time on appeal, that the Trust limited Exhibit A to distribution of trust assets and did not authorize Exhibit A to change the amendment procedure. He forfeited this argument by not raising it in the trial court. (*Truck Ins. Exchange*, *supra*, 56 Cal.App.5th at p. 635.) Were we to reach the merits, the argument would fare no better. The Declaration incorporated Exhibit A in its entirety. It did not limit that incorporation to Exhibit A's distribution provisions. To read the incorporation so narrowly would require us to disregard Article II, subdivision (B) altogether, rendering it inoperative in violation of the rule that every expression in an instrument must be given effect. (§ 21120.)

The trial court correctly found that Exhibit A is a valid part of the Trust and that William had authority to amend it following Julia's death. Because the Trust documents are unambiguous, no extrinsic evidence was admissible. Peter's remaining contentions are foreclosed by the plain language of the instrument.

10

DISPOSITION

We affirm the trial court's order granting Edward's petition in part. Costs are awarded to respondent.

<u>NOT TO BE PUBLISHED.</u>

VAN ROOYEN, J.[*]

We concur:

YEGAN, Acting P. J.

BALTODANO, J.

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Roger L. Lund, Judge

Superior Court County of Ventura

_____


Law Offices of Barron E. Ramos and Barron E. Ramos for Petitioner and Appellant.

Law Office of Fred Rosenmund and Frederick Rosenmund and Charles A. Hamm for Objector and Respondent.